**STATE of Tennessee, Appellee,**

v.

**Moses A. COURY and Kennon D. Laird, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 31, 1985.

Permission to Appeal Denied by Supreme Court Aug. 12, 1985.

See also, Tenn.Cr.App., 657 S.W.2d
777.

Thomas A. Thinnes, Phoenix, Ariz., Lionel R. Barrett, Jr., Nashville, for appellant Coury.

Donald P. Harris, Franklin, for appellant Laird.

W.J. Michael Cody, Atty. Gen. of Tenn., Kevin Steiling, Asst. Atty. Gen. of Tenn., Nashville, Joe Baugh, Dist. Atty. Gen., Franklin, for appellee.

## OPINION

DUNCAN, Judge.

The defendants, Moses A. Coury and Kennon D. Laird, were convicted of assault from ambush, and were sentenced to the penitentiary for thirty-five (35) years and forty-five (45) years, respectively.

The defendants raise numerous issues in this appeal, some singly and some jointly. Among other issues, they say the prosecuting attorney made improper remarks during voir dire, during trial and in his argument. Issues are raised about the admission of certain evidence. Also, the defendant Laird contests the sufficiency of the evidence. We find no reversible error in the record, and the judgment as to each defendant is affirmed.

The State's evidence, as accredited by the jury, showed that on June 15, 1981, at approximately 5:15 p.m., the victim, William Wilson, pulled into the driveway at his home on Arnold Road in Williamson County. He got out of his car and went to his doorway, at which time several shots were fired at him. One shot hit him in the left hip area. Wilson was knocked through the door and onto the floor of the utility room. Subsequently, Wilson's son came and took him to the emergency room of Vanderbilt Hospital. Wilson left that hospital approximately two (2) hours later and checked into the Southern Hills Hospital where he remained for four (4) days. Wilson did not know either defendant and knew of no reason why they would shoot him.

The police investigation revealed that there was a dairy barn behind Wilson's house. The police found in the barn five (5) spent .45 caliber pistol shells. Also recovered from the barn was a chair which was found near a broken window. Three (3) bullets were found embedded in the back of the Wilson house. Also, there was evidence that two (2) more bullets had gone through the back door.

Williamson County Sheriff Fleming Williams received information about a two-tone green Chevrolet pickup truck with Arizona license number 2RG996, that had been observed near the time of the shooting by witnesses on nearby Lynch Road. Lynch Road is located about one-half (½) mile behind Wilson's house. Lynch Road and Wilson's house are separated by a plowed field and pasture. Sheriff Williams put out an all points bulletin regarding the suspect truck. This message was put out at around 2:00 a.m. on the morning of June 16, 1981.

At approximately 4:30 a.m. on June 16, Mike Claver, a police officer from Henryetta, Oklahoma, was on patrol with another officer. They stopped a pickup truck matching the description of the one mentioned in the teletype from Tennessee. The truck was occupied by the defendants. The defendant Coury got out of the truck and defendant Laird remained in the truck. When these officers told Coury that their truck matched the description of the truck sought by the authorities in connection with a murder attempt in Tennessee, Coury stated that he and his companion were not

involved, and that they were coming from Arizona. Coury then asked for directions to Schulter, Oklahoma, where he said they were headed to have their truck repaired. The officers allowed them to proceed. However, the officers subsequently concluded that the truck may have been the one sought after all, and then they pursued the truck to Schulter where it was found at a garage. The defendants were then apprehended by these officers and other Henryetta and Okmulgee County, Oklahoma, officers.

Other evidence showed that Sheriff Williams went to Okmulgee, Oklahoma, on June 16, 1981. He searched the truck and a blue suitcase that Coury had been carrying at the time the defendants had been arrested.[1] In the truck Sheriff Williams found a manicuring set imprinted with the name "Grand Ole Opry," and a matchbook advertising a motel in Nashville, Tennessee. Also, a Tennessee travel magazine, dated June 15, 1981, and a plastic bag with the name and address of a Nashville, Tennessee, ice company were found in the truck. The suitcase contained items of clothing and other articles.

Sheriff Williams returned to Tennessee on June 18, and he subsequently advised the Oklahoma police to confiscate the defendants' clothing along with the suitcase and to hold this evidence for him. On June 19, Williamson County Detective Thomas Atkinson turned over to Sheriff Williams the rusty folding chair that had been found in Wilson's dairy barn. In July, Sheriff Williams returned to Oklahoma, obtained some items of clothing belonging to the defendants, and placed these items in a plastic bag. Subsequently, these items, along with the chair, were forwarded to the F.B.I. for testing.

Robert Webb, an F.B.I. expert in the field of instrumental analysis, tested the material. He took the items of clothing and scraped them, collecting the debris which fell from the clothing. Present in

the debris were paint particles consisting of brown metallic enamel over a broken enamel primer with rust underneath. These particles were similar in color, layer structure, and degree of deterioration to paint particles taken from the metal folding chair.

Additional evidence by the State showed that William Brown, who lived on Lynch Road about one-half (½) mile behind Wilson's home, came home from work between 5:00 p.m. and 6:00 p.m. on the afternoon of June 15, 1981. He saw a pickup truck parked on the side of Lynch Road. He and a neighbor, Tim Smith, went up and spoke to the lone occupant, who he identified as Coury. Coury told Brown that he was having some family problems and was trying to sort things out, but that if he wanted him to leave he would. Brown told Coury that it was a secluded neighborhood, and that he would appreciate it if Coury would leave. Brown wrote down the license number of the truck and later gave this number to the police.

Tim Smith's testimony was similar to Brown's testimony. Smith also identified Coury as the man in the truck and said he looked "sweaty." Smith and Brown saw no one else in the area.

Earl Dodd, Sr., and his son, Earl Dodd, Jr., saw a green pickup truck in front of Wilson's driveway at around 11:00 p.m. on the night prior to the shooting. Two (2) men were at the truck, one inside and one outside. Dodd, Jr., identified Laird as the man outside the truck and Coury as the man inside the truck. Dodd, Sr., also identified Laird as the man outside the truck. When Dodd, Jr., asked Laird where he was from, Laird responded that he was from Arizona. Dodd, Jr., wrote down the truck's license number which he later gave to the police. The license number was the same number that was on the truck the next day when Brown saw it parked on Lynch Road. Also, the license bearing this same number was still on the defendants' truck when the

---

**1.** On interlocutory review, our Court upheld the search of the suitcase. *State v. Coury,* 657

S.W.2d 777 (Tenn.Cr.App.1983).

defendants were arrested in Oklahoma on June 16.

Coury does not take issue with the convicting evidence. However, Laird says that the evidence is insufficient to support his conviction. We disagree.

As we view the circumstantial evidence in this case, we find it is more than sufficient to show Laird's guilt.

■ Circumstantial evidence alone may be sufficient to convict one of a crime, if such evidence sufficiently proves all the necessary elements. *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451 (1958). The weight of circumstantial evidence is for the jury to determine. *Williams v. State*, 520 S.W.2d 371 (Tenn.Cr.App.1974).

In *Pruitt v. State*, 3 Tenn.Cr.App. 256, 267, 460 S.W.2d 385, 390 (1970), the court, in stating the rules applicable to criminal convictions based upon circumstantial evidence, said:

The law is firmly established in this State that to warrant a criminal conviction upon circumstantial evidence alone, the evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt, and it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that he is the one who committed the crime.

■ The determination of whether all other reasonable theories are excluded by the evidence presented is primarily a question of fact for the decision of the jury. *Marable v. State, supra; Pruitt v. State, supra.*

"In circumstantial evidence cases, single facts of themselves may account each for little weight, but when all of the facts and circumstances are put together, they may unerringly point the finger of guilt to the defendant to the exclusion of all others beyond a reasonable doubt." *Hicks v. State*, 490 S.W.2d 174, 178 (Tenn.Cr.App. 1972); *Hackney v. State*, 551 S.W.2d 335, 339 (Tenn.Cr.App.1977).

■ The State's theory was that Laird was the one who actually fired the shots at Wilson and that Coury was equally culpable as an aider and abettor. The evidence supports this theory.

The night before the shooting Laird and Coury were seen in their truck at Wilson's driveway. At about the time of the shooting, Coury was seen in this same truck, parked by the side of the road near Wilson's house. Some eleven (11) hours after the shooting, both defendants were in this same truck in Oklahoma at which time they were arrested. The evidence overwhelmingly refuted Coury's statement to the Oklahoma police that he and Laird were not involved in the murder attempt in Tennessee and that they were coming from Arizona. The jury was entitled to find from the F.B.I.'s analysis of the clothing that Laird had been in Wilson's barn, sitting in the folding chair while waiting for Wilson to arrive at his home.

We readily conclude that the State's proof meets the evidentiary requirements of T.R.A.P. 13(e) and *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). While Coury does not contest the evidence, we find that it is more than sufficient to show both defendants' guilt beyond a reasonable doubt.

■ Both defendants complain about some of the prosecuting attorney's remarks made during voir dire. In two (2) instances, the prosecuting attorney made references to the expense that would be involved in the trial of the case. At another point, he stated his personal opinion that the State had an "excellent" circumstantial evidence case against the defendants.

Unquestionably, these comments were improper. However, these improper remarks fall short of constituting prejudicial error. We find these errors to be harmless. T.R.A.P. 36(b); Tenn.R.Crim.P. 52(a). The trial court correctly denied the defendants' motions for mistrial regarding these matters.

■ Both defendants allege that the prosecuting attorney made an improper comment during trial about the defendant Coury's right not to testify.

During defense counsel's cross-examination of William Brown, questions were asked of Brown concerning his opportunity to see a tattoo on Coury's arm. At one point, defense counsel turned to Coury and said: "Would you show that (the tattoo) to him, Moses?" The prosecuting attorney then inquired of the court: "Your honor, is Mr. Coury going to testify?"

Initially, we find that defense counsel's request for Coury to exhibit his tattoo was improper. This exhibition would have been of a testimonial character, and without the defendant taking the stand, he could not have been cross-examined regarding the position of his arm at the time Brown saw him, or as to whether he even had a tattoo on his arm at the time Brown saw him. Nevertheless, the prosecuting attorney should not have commented as he did before the jury. However, like the preceding issue, we find nothing prejudicial about the remark. We note that during voir dire, defense counsel, as well as the court, repeatedly stressed the defendants' right not to testify. Also, the trial court included an instruction in its final charge about the defendants' right not to testify. The error here did not affect the verdict of the jury and would not rise to the level of being reversible error. We find that the trial court did not err in refusing to grant a mistrial because of this remark.

■ Laird also says that during jury argument, the State's counsel made remarks about his failure to testify. We have reviewed the remarks complained of and find that they may not be categorized as a comment on Laird's failure to testify. Mere argument by the State that proof on a certain point is unrefuted or uncontradicted is not an improper comment upon a defendant's failure to testify. *State v. Rice*, 638 S.W.2d 424, 427 (Tenn.Cr.App. 1982); *State v. Livingston*, 607 S.W.2d 489 (Tenn.Cr.App.1980). We find no merit to this complaint.

■ Also, we find no merit to Laird's complaint that there was a break in the chain of custody regarding the clothing taken from the defendants.

Sheriff Williams obtained the defendants' clothing, which was in a suitcase, from C.E. Bryant, a former deputy sheriff in charge of the police property room in Okmulgee County, Oklahoma. There was some discrepancy in the testimony of Sheriff Williams and Deputy Bryant as to just when one of Laird's shirts had been placed in the suitcase. Some of the testimony indicated that the shirt may have been placed in the suitcase after the suitcase had been placed in the property room on June 16. However, we do not view this minor discrepancy as constituting a break in the chain of custody.

As stated, Sheriff Williams testified he received the clothing from Deputy Bryant. Deputy Bryant testified about securing the clothing from the defendants and verified the fact that he delivered the evidence to Sheriff Williams. Sheriff Williams sent the evidence to the F.B.I. Agent Webb testified and identified the clothing that he received from the sheriff. Thus, from all of the evidence, we are satisfied that the clothing tested by the F.B.I. was the same clothing taken from the defendants.

We find that the trial court correctly determined that a proper chain of custody had been established by the evidence. *Swafford v. State*, 529 S.W.2d 748, 749 (Tenn.Cr.App.1975); *Ritter v. State*, 3 Tenn.Cr.App. 372, 462 S.W.2d 247 (1970).

Another complaint by Coury concerns the manner of the selection of additional jurors to make up the jury that tried the case.

■ The jury panel of those present for jury service was exhausted. Additional jurors were summoned from the vicinity, pursuant to the provisions of T.C.A. § 22-2-308, and three (3) of those citizens eventually became part of the jury. Defense counsel examined each of these jurors and did not seek to challenge any of these three

(3) jurors who were selected. The record does not indicate that Coury utilized all of his peremptory challenges. It is only where a defendant exhausts all of his peremptory challenges and is thereafter forced to accept an incompetent juror can a complaint about the jury have merit. *Hale v. State*, 198 Tenn. 461, 473, 281 S.W.2d 51 (1955); *McCook v. State*, 555 S.W.2d 411, 413 (Tenn.Cr.App.1977).

■ Further, the record shows that the jury that tried the case was fair and impartial. There is nothing in the record to show that any prejudice resulted to the defendant by the manner of the selection process utilized. We find no error.

■ Next, defendant Coury contends that the trial court erred in allowing a .38 caliber pistol to be admitted into evidence. The evidence showed that at the time the defendants were arrested at the garage in Oklahoma, some eleven (11) hours after the shooting, the officers found a loaded .38 caliber pistol in a plastic bag. The bag was inside an "ammo" case. Prior to the discovery of the pistol, Laird was seen "shuffling back and forwards" in the back of the garage and was seen placing a hat over the "ammo" case, obviously attempting to conceal it and the gun.

Coury argues that since the State's evidence indicated that Wilson was shot with a .45 caliber pistol, then the .38 caliber pistol found in the garage was not relevant. We disagree.

It is true that five (5) .45 caliber spent shells were found in Wilson's barn, indicating that such a weapon was used in the ambush. However, the jury was entitled to consider that an additional weapon was also used in the shooting. Wilson testified that he was not sure how many shots were fired, but "it sounded like a young war." He described the shots as being "all together, bang, bang, bang, bang, bang, bang, bang, bang." Thus, the jury was entitled to consider whether an additional weapon had been used or had been available for use in the shooting. As such, the pistol being confiscated from the garage was a circumstance for the jury's consideration.

Further, the defendants were in flight from Tennessee at the time they were apprehended. The circumstances under which they were apprehended clearly showed an attempt to evade prosecution. The jury was entitled to consider the pistol and Laird's actions with reference thereto as such would relate to the defendants' flight and attempt to avoid arrest. *See Sotka v. State*, 503 S.W.2d 212 (Tenn.Cr. App.1972).

In his final complaint, Coury says it was error for the trial court to allow into evidence a prior conviction of his witness, Bill Francis.

Francis testified that on Monday, June 15, 1981, between 7:00 a.m. and 7:30 a.m., he had seen Coury in Mesa, Arizona.

On cross-examination, the State elicited from Francis that he had been convicted of grand larceny in Tennessee in 1956.

Coury had objected to this testimony, and at a jury-out hearing the trial court found that the evidence would be allowed.

Coury's argument at trial, as it is here, is that the admission of the evidence of Francis's prior conviction violated both the spirit and the letter of the holding in *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976).

Initially, we note that the State objected to Francis's testimony on the grounds that no alibi notice was given, as such is required by Tenn.R.Crim.P. 12.1. Coury's counsel argued that he merely wanted to show that Coury was in Arizona on the morning of June 15, 1981, and that he was not attempting to set up an alibi defense. If, as argued by Coury's counsel, the testimony was not for the purpose of an alibi defense, then such testimony was irrelevant.

■ At any rate, it is obvious that the import of Francis's testimony was to leave the inference with the jury that if Coury was in Arizona on the morning of the shooting, then he could not have been present in Tennessee at the time of the shooting that afternoon. Thus, the clear

purpose of the testimony of Francis was to alibi Coury. As such, none of Francis's testimony should have been admitted by reason of Coury's failure to comply with the alibi notice mandate of Tenn.R.Crim.P. 12.1.

■ Further, assuming *arguendo* the competency of any of Francis's testimony, we are satisfied that the evidence of his prior conviction did not serve to prejudice Coury. Since the other evidence unquestionably established Coury's presence in Tennessee on the night prior to the shooting as well as at the time of the shooting, the likelihood that the jury would have accredited any of Francis's testimony is nonexistent.

For all of the reasons stated, we find no merit to the foregoing complaint.

As indicated in the foregoing opinion, we have found a few errors incident to the trial of this case. It would be most unusual for a lengthy trial of this kind to be totally error free. At any rate, the errors we have found, neither singly nor combined, would constitute reversible error. The defendants were represented by able counsel. They had a fair trial before an impartial jury. The evidence unquestionably established their guilt. The errors in this record neither served to unfairly prejudice the defendants nor did they affect the jury's verdict or the trial court's judgment on that verdict. T.R.A.P. 36(b); Tenn.R. Crim.P. 52(a).

After considering the entire record, we conclude that the judgment as to each defendant should be and is hereby affirmed.

BYERS, J., and JAMES C. BEASLEY, Special Judge, concur.