**STATE of Tennessee, Appellee,**

v.

**Ronnie Alfonzo RODRIGUEZ and Anthony Keith Lloyd, Appellants.**

Court of Criminal Appeals of Tennessee, at Jackson.

April 20, 1988.

A.C. Wharton, Jr., Shelby County Public Defender, Memphis, James H. Bostick, Asst. Public Defender (On appeal only), Linda Clements, Asst. Public Defender (At trial only), Memphis, for appellant, Rodriguez.

Hunter Lane, Jr., (At trial and on appeal), Memphis, for appellant, Lloyd.

W.J. Michael Cody, Atty. Gen., Robert Conley, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Edgar A. Peterson, IV, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

SCOTT, Judge.

The appellants were convicted of robbery. Mr. Rodriguez was sentenced to ten years in the state penitentiary as a Range I, standard offender. Mr. Lloyd was sentenced to five years in the state penitentiary, also as a Range I, standard offender. On appeal Mr. Rodriguez has presented three issues and Mr. Lloyd has presented

two. Both challenge the sufficiency of the convicting evidence.

Penelope Evans was employed as the clerk/cashier at the Handy Food Store at 4306 Macon Road in Memphis. At about 4:00 P.M. on September 12, 1985, a man, whom she positively identified as Mr. Rodriguez, came into the store, rudely asked where the bathroom was, bought cigarettes and went back outside, presumably to the restroom which was located outside. Because the restroom door was difficult to open, she went to the window to see if he was having difficulty with it. She noticed that he went to an old step van similar to a bread truck, which was in bad condition. There he stood with his back to her, apparently engaged in conversation with someone else. The truck had a Tennessee drive-out tag in the window.

About fifteen minutes later, Mr. Rodriguez came back into the store, got a six pack of beer from the cooler and brought it to the counter. As Ms. Evans was putting the beer in a sack, he raised his shirt to display a gun stuck in the front of his pants. He demanded the money and she put it in a sack for him. He also went behind the counter, got a sack and took the coins and food stamps from the cash register. Before leaving, he pulled the gun and made Ms. Evans lie down on the floor in the back room until he left.[1] As a result of the robbery, Mr. Rodriguez got approximately $380.00 and approximately ten $1.00 food stamps.

The appellants were arrested in the step van at about 6:30 P.M. that same day. Mr. Lloyd was the driver and Mr. Rodriguez was the passenger. In the van the officers found a .45 caliber BB pistol which, according to the arresting officer, appeared real until he picked it up. Also found were a yellow T-shirt which the victim recognized, and a cap which she also recognized. From Mr. Rodriguez they took $242.00 in cash and eight $1.00 food stamps. From Mr. Lloyd they recovered $56.85.

At about noon the following day, the victim picked Mr. Rodriguez from a line-up.

The victim never saw Mr. Lloyd and the proof of his participation was entirely circumstantial.

Mr. Rodriguez' proof consisted of an attack upon the line-up, contending that he was easy to spot, since he was the only participant of Hispanic descent and also the shortest person in the line. He also presented an alibi defense, contending that he was at the home of Anna Robinson from about 4:05 or 4:10 until 5:00 P.M., causing her to miss a television program which she wanted to see at 4:30. However, Ms. Robinson was unable to remember the name of the program she intended to watch. He did not testify.

Mr. Lloyd testified, admitting that he and the appellant were together from about 11:30 or 12:00 o'clock that day onward, as he took Mr. Rodriguez to look for window cleaning jobs. Mr. Lloyd positively identified the van in which they were arrested as his. The yellow shirt was also identified as his, being one which he wears a lot in his work as a painter. The hat and the gun had never been in his van before, although he recognized the hat as belonging to a friend. Mr. Rodriguez wore neither item that day.

According to Mr. Lloyd, he is a regular customer at the Handy Food Store and knows Ms. Evans. It was for that reason that he stopped there for Mr. Rodriguez to get his cigarettes. When they left the store he had trouble cranking his van, but did so and they left. Mr. Rodriguez saw a friend and got out of the van at about 4:15 P.M. After that Mr. Lloyd went riding around, stopping at various friends' homes. At about 5:00 P.M., he saw Mr. Rodriguez walking, stopped and picked him up, and they continued to ride around. Subsequently, he stopped for Mr. Rodriguez to visit someone and he waited in the van while Mr. Rodriguez visited a friend for approximately forty-five minutes. Later, they were stopped by the police and arrested. Mr. Lloyd testified that he had no idea that Mr. Rodriguez was involved in anything illegal.

---

1. Strangely, Mr. Rodriguez was not charged with armed robbery, although he pulled the gun and pointed it at Ms. Evans while he was in the store.

Based upon this controverted proof, the jury found both appellants guilty of robbery.

■ A jury verdict of guilty, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the theory of the state. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

The victim positively and unequivocally identified Mr. Rodriguez as the robber, both at the line-up and subsequently in court. According to her, she was not prompted or given any suggestion by the police or by anyone else as to who should be picked in the line-up.

■ Mr. Lloyd was clearly an aider and abettor. Aiders and abettors are deemed principal offenders and are punishable as such. T.C.A. § 39–1–303. An aider and abettor is one who advises, counsels, procures or encourages another to commit a crime. *Flippen v. State,* 211 Tenn. 507, 365 S.W.2d 895, 899 (1963). Of course there must be some evidence of participation in the crime before one can be convicted as an aider and abettor. The evidence can be entirely circumstantial. *Id.* Although he denied any knowledge that the appellant was going to rob the store, Mr. Lloyd admitted that they were in his van when they stopped for Mr. Rodriguez to buy cigarettes. Although he denied driving the van for Mr. Rodriguez's getaway, there was ample evidence from which the jury could infer that he did so. The jury saw and heard all of the witnesses in person and had the opportunity to perform their function of weighing the testimony. It was entirely reasonable for the jury to find beyond a reasonable doubt that Mr. Lloyd participated in the robbery as the wheelman.

There was ample, indeed overwhelming, evidence from which any rational trier of fact would conclude that both appellants were guilty of robbery beyond a reasonable doubt. Rule 13(e), T.R.A.P., *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979). The issues challenging the sufficiency of the convicting evidence are without merit.

In another issue both appellants challenge the trial judge's overruling of the motion to suppress the identification of Mr. Rodriguez in the line-up. They contend everyone in the line-up was five to eight inches taller than Mr. Rodriguez, and the police told the victim that a suspect was in custody prior to the line-up.[2]

■ In *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), the United States Supreme Court enumerated five factors to be considered in determining whether an identification is reliable when the confrontation between the victim and the accused may have been suggestive. These factors are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

■ Applying these factors, it is clear that the identification was reliable. Ms. Evans had ample time to view Mr. Rodriguez in good lighting while he was in the store. In fact, he made two visits to the store, giving her an additional opportunity to view him. She also watched him through the window as he stood at the van. No one else was in the store at the time and her attention was focused on him. The description that she gave to the police was clear enough that Mr. Rodriguez was arrested based upon her description. She was absolutely positive in her identification

**2.** Mr. Rodriguez was approximately 5′ 4″ tall. The others appeared to be approximately 5′ 9″, 5′ 8″, 5′ 6″, 5′ 9″ and 5′ 7″ tall. The victim was told that a suspect was in custody, but was not told he was in the line-up. Of course, it is logical to assume that there is a suspect in custody before a line-up will be held.

at the line-up, which was held 19½ hours after the robbery. This issue has no merit.

In Mr. Rodriguez' final issue he contends that the trial judge erred by refusing to allow him to demonstrate his appearance to the jury in the shirt and cap which the victim testified he wore during the robbery.[3] The trial judge was at first inclined to allow Mr. Rodriguez to put on the clothing in front of the jury. However, relying on *State v. Coury*, 697 S.W.2d 373, 378, (Tenn.Cr.App.1985), the state convinced the trial judge to disallow the demonstration. In *Coury*, this Court noted that Mr. Coury's counsel's request for his client to exhibit his tattoo to the jury was improper without him taking the stand, since the "exhibition would have been of a testimonial character."[4] The appellant points to *State v. Sanders*, 691 S.W.2d 566, 568 (Tenn.Cr.App.1984), in which this Court held that "a defendant may be required to exhibit himself in any manner which an ordinary person is commonly seen in public" without being a violation of the constitutional privilege against self-incrimination.

In *Barrett v. State*, 190 Tenn. 366, 229 S.W.2d 516, 518–519 (1950), our Supreme Court held that the placing of a hat on the accused's head as a method of identification did not violate his constitutional immunity against self-incrimination.

In *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910), Justice Holmes observed that it would be "an extravagant extension" of the Fifth Amendment to forbid testimony that a blouse "fitted" the defendant after he was forced to try it on in the witness' presence. It was held that there can be no exclusion of the defendant's body as evidence when it may be material. It was further noted that to so hold would require that the jury must be forbidden to look at the defendant in court, an impossible requirement. *Holt* has been frequently cited in the cases in which this issue has arisen in the context of in-court demonstrations.

The text writer teaches that at trial an accused may be required to stand, remove a veil, visor, mask or glasses, put on a wig and sunglasses, exhibit his hands, roll up his sleeve to show a tattoo, submit to the taking of his fingerprints, remove his coat and shirt to show scars, allow inspection of his face for identifying marks, move his feet into view or put on a garment, hat or cap. *Wharton's Criminal Evidence*, § 624, pp. 219–221 (13th ed.).

The issue normally arises when the prosecution seeks to have the non-testifying defendant put on certain garments in the presence of the jury. For example, in *Vigil v. People*, 134 Col. 126, 300 P.2d 545, 547 (1956), *U.S. v. Roberts*, 481 F.2d 892, 894 (5th Cir.1973), *State v. Trueman*, 303 Minn. 426, 227 N.W.2d 824, 825 (1975), and *State v. Perry*, 291 N.C. 284, 230 S.E.2d 141, 143–145 (1976), the defendant was required to put on a mask. In *U.S. v. Turner*, 472 F.2d 958, 959 (4th Cir.1973), he was required to don a wig and sunglasses. In *State v. Walls*, 637 S.W.2d 812, 814 (Mo. App.1982), the defendant was required to put on blue jeans, a shirt and a cap, and walk before the jury. In *People v. Turner*, 22 Cal.App.3d 174, 99 Cal.Rptr. 186, 190–191 (1971), the defendant was required to put on a scarf and sunglasses in order to compare her appearance with the photo made at the time a check was cashed.

In *People v. Warmack*, 83 Ill.2d 112, 46 Ill.Dec. 141, 147–148, 413 N.E.2d 1254, 1260–1261 (1980), the Court relied on *Holt* and found that it was proper to require the defendant to try on clothing where fit and ownership of the clothing was in issue. In *Partlow v. State*, 453 N.E.2d 259, 271 (Ind. 1983), the Court held it was within the judge's discretion to require the defendant to put on a certain jacket. After he took

---

**3.** As previously noted, Mr. Rodriguez is of smaller stature and the shirt was a large, size 42–44.

**4.** Actually, this statement was dictum in *Coury*. The issue there under consideration was an improper remark by the prosecuting attorney. The quoted statement was made in the analysis of that issue and unsupported by any citations to other authorities. In another tattoo exhibition case, this Court held to the contrary. *State v. Henderson*, 623 S.W.2d 638, 641 (Tenn.Cr. App.1981), citing *Black v. State*, 479 S.W.2d 656, 658 (Tenn.Cr.App.1972).

the stand, the defendant was required to put on a holster and a gun to rebut his testimony concerning self-defense in *Maxwell v. State*, 408 N.E.2d 158, 166 (Ind.App. 1980). In *State v. Oschoa*, 49 Nev. 194, 242 P. 582, 586–587 (1927), the defendant was required to put on a shirt. In *Commonwealth v. Williams*, 317 Pa.Super. 456, 464 A.2d 411, 418 (1983), the Court approved the requirement that the defendant put on a certain shirt and jacket. The only issue was seen as whether the probative value of the demonstration outweighed the prejudicial effect of having the jury see him so attired. In *State v. Lerner*, 112 R.I. 62, 308 A.2d 324, 343 (1973), two defendants were required to try on jackets, where the only issue was their fit, not identification.

A shirt found at the crime scene was involuntarily placed on the defendant in *State v. Bauman*, 77 Wash.2d 938, 468 P.2d 684, 686 (1970). In all of these cases, the courts approved the placing of the items upon the bodies of the defendants at the request of the prosecutors. Such evidence has been termed "demonstrative, not testimonial," *State v. Walls*, supra, and "real or physical evidence," not "testimonial or communicative" evidence. *U.S. v. Turner*, supra.

In one case, the defendant refused to put on a hat in the presence of the jury. Referring to the evidence as physical, not testimonial, the court approved an instruction to the jury that they could give the defendant's refusal any weight they chose. *State v. Williams*, 307 Minn. 191, 239 N.W. 2d 222, 225–226 (1976).

Of course, like anything else, the demonstrations with the defendant's body can be taken too far. In *Riley v. Commonwealth*, 620 S.W.2d 316, 318–319 (Ky.1981), it was held that the defendant was denied a fair trial when he was required to put on a coat, scarf and mask, carry a gun and make statements to the victim, who had previously been unable to identify the defendant from photographs, at a two person line-up and at the preliminary hearing.

In all of these cases, the prosecutor got the court to require the defendant to don the items of clothing. There is no reason to promulgate a different rule when the defendant seeks to introduce such evidence without taking the stand. Thus, we hold that the defendant can introduce, "demonstrative real or physical evidence" by exhibiting himself to the jury in items of clothing relevant to the inquiry, whether he testifies or not. The language in *Coury* to the contrary is disapproved. Thus, it was error to refuse to allow the appellant to put on the shirt in the presence of the jury.

However, the evidence of Mr. Rodriguez's guilt—apart from the clothing—was so overwhelming that any error in denying him the opportunity to model the shirt for the jury was harmless beyond a reasonable doubt, Rule 52(a), Tenn.R.Cr.P., and did not affect the judgment or result in prejudice to the judicial process. Rule 36(b), T.R.A.P. This issue has no merit.

Finding no merit to any of the issues, the judgment is affirmed.

TATUM, Special Judge, concurs.

DWYER, J., concurring in results only.