# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### MAY, 1998 SESSION


FILED

October 2, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | No. 03C01-9705-CC-00191 |
| | ) | |
| Appellee | ) | |
| | ) | Sevier County |
| vs. | ) | |
| | ) | Honorable Rex Henry Ogle, Judge |
| **CECIL EUGENE McGUIRE,** | ) | |
| | ) | (Aggravated Sexual Battery, Aggravated |
| Appellant. | ) | Criminal Trespass) |

FOR THE APPELLANT:

DENNIS CAMPBELL
Assistant Public Defender
140 A Court Ave.
Sevierville, TN 37862

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

MICHAEL J. FAHEY
Assistant Attorney General
Criminal Justice Division
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

ALFRED C. SCHMUTZER, JR.
District Attorney General

STEVEN R. HAWKINS
Assistant District Attorney General
125 Court Ave., Suite 301
Sevierville, TN 37862

OPINION FILED: _____

**AFFIRMED AS MODIFIED**

CURWOOD WITT
JUDGE

**OPINION**

The Sevier County Grand Jury indicted sixteen-year old Cecil Eugene McGuire for aggravated rape, aggravated sexual battery, and aggravated burglary. After a trial, the jury acquitted the defendant of aggravated rape and aggravated burglary but found him guilty of aggravated sexual battery and aggravated criminal trespass, a lesser grade offense of aggravated burglary. The trial court sentenced him to serve eleven years in the custody of the Department of Correction as a Range I, standard offender for the Class B felony, concurrently with eleven months and twenty-nine days for the Class A misdemeanor. Pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure, the defendant presents the following issues:

1. Whether the indictments are fatally defective and thereby deprive the trial court of jurisdiction in this case.

2. Whether the evidence as a matter of law was insufficient to support the convictions.

3. Whether the trial court improperly credited and weighed the enhancement factors and imposed an excessive sentence.

After a careful review of the record and the applicable law, we find no error warranting reversal of the defendant's convictions. We affirm the convictions, but for reasons explained below, we modify the felony sentence from eleven years to ten years.

The defendant's convictions arose out of an incident involving the defendant, known as "Little Gene," his co-defendant, Randy Steckley,[1] known as "Cash," and Lorriane Toth,[2] the victim. In May of 1995, Lorriane Toth lived in the

---

[1] Steckley, who was three years older than McGuire, was indicted separately. He pleaded guilty to rape and received a sentence of eleven years.

[2] In the indictment, the victim's first name is spelled "Lorriane." At other places in the record it is spelled "Lorraine." We have followed the grand jury's spelling in this opinion.

Ridgewood Apartments in Pigeon Forge with her two teen-age daughters. The defendant's grandmother and his uncle, Mickey McGuire, lived in a nearby apartment. Mickey McGuire employed both the defendant and the co-defendant. After work on May 17, the three went to McGuire's apartment.[3] A neighbor named Rod joined them, and the adults purchased beer. Everyone, including the defendant began to drink. When the beer was exhausted, someone would leave to buy a new supply. Randy Steckley brought some marijuana which he, the defendant, and others smoked.

At some point during the evening, Rod's wife, Lori, invited her friend, Lorriane Toth, to come to the "social get-together." Ms. Toth had broken her hip two months earlier and was unable to walk without a walker or crutches. The doctor had prescribed Tylenol with codeine for pain and Xanax for depression. She had been drinking beer before she arrived at the party and she continued to consume beer throughout the evening. Ms. Toth knew the defendant from his previous visits to his grandmother's apartment, but she did not talk with him much during the evening. She spoke to Steckley at least once when she told him that he had nice teeth. She also testified that Steckley came over and grabbed her breast but that she hit him and told him to get away from her. Shortly after midnight, Ms. Toth decided to go home to bed. Her fourteen-year old daughter, Amber, went to her bedroom to go to bed. Ms. Toth left her front door unlocked because Paige, her younger daughter, had gone to Lori's apartment for awhile. Ms. Toth had been drinking heavily and before getting into bed she took the Xanax that her doctor had prescribed. She admitted that she did not undress and that she passed out on top of the covers.

At about 1:30 a.m., she awoke to find Randy Steckley on top of her. He had penetrated her vagina and was holding her arms down. She tried

---

[3] According to the defendant's testimony, his grandmother was out of town.

3

unsuccessfully to push him off. When she told him to get off of her, he refused and indicated that he would not leave until he ejaculated. During this time she saw "Little Gene" standing by the other bed. Her panties were on the floor next to him. The defendant's pants were unzipped, and he and Steckley were laughing and joking. After Steckley finished, he and the defendant left. She went to check on Amber whom she found sleeping. Then she went "hollering" down the hall to the McGuire apartment. She found Mickey McGuire sitting on the sofa by himself. She told him in no uncertain terms what had occurred and what she would do if she caught the two and then went back to her apartment. Lori heard the commotion and called 911. Ms. Toth went to the hospital where she was interviewed by a police investigative officer. She identified "Little Gene" and "Cash" as the rapists. The detective testified that Ms. Toth smelled strongly of alcohol, that her eyes were red, and that she was "very, very angry." Hospital testing indicated that her blood alcohol level was .30%.

The defendant testified on his own behalf at trial. He admitted that he had drunk quite a lot of beer and that he had smoked marijuana during the evening. He said that the victim had spent a lot of time talking and flirting with Randy Steckley. According to the defendant, the victim told him that she'd like to go in the bedroom with Steckley. After the victim left the party, he and Steckley went to find some more marijuana. Steckley suggested that they go to "that woman's place" because she had told him to come on up. He found the door partially open but no one responded to their knocks. When Steckley went into the apartment, the defendant followed. He knew where Amber slept, and he went to her room. When he turned the light on, he saw that she was asleep on the bed. After he turned the light off, he closed the door and went down the hall to see what Steckley was doing in Ms. Toth's bedroom. He saw the victim asleep on the bed, and he told Steckley that they should get out of there. Steckley ordered him to take off her panties. The defendant testified that he obeyed because he was afraid of Steckley. Steckley, he said, "knew a lot of

4

people" and had a tattoo that indicated he had killed someone. At Steckley's direction he spread the victim's legs apart and touched the victim's vagina. He let Steckley smell his fingers. Steckley then pushed him back saying, "Get out of my way."

After Steckley completed the act, he followed the defendant out of the room. Steckley took three dollars that were lying on the kitchen counter and another dollar or two from a purse. As they were sitting in the McGuire apartment, they heard the victim yelling as she was coming down the hall. The defendant ran out the front door while Steckley climbed out a back window. They walked to a motel. Steckley slid open a bathroom window on one of the units and the two entered. Later, after Steckley had gone to sleep, the defendant called his parents, and his father came to pick him up. In the afternoon, the defendant and his father met with the detective who was investigating the case. He identified the rapist as Randy Steckley and told the police where Steckley could be found. At first, the defendant denied that he was present when Steckley raped the victim, but when questioned more closely, he gave a statement that was virtually identical to his trial testimony.[4]

Based on this evidence, the jury acquitted the defendant of aggravated rape and aggravated burglary but convicted him of aggravated sexual battery and aggravated criminal trespass.

In his first issue, the defendant contends that, based upon State v. Roger Dale Hill, Sr., No. 01C01-9508-CC-00267 (Tenn. Crim. App., Nashville, June 20, 1996), the indictment is defective because it fails to allege a culpable mental state. However, the supreme court has reversed this court's decision in

---

[4]    The detective did not tape record the interview, and, when the detective asked the defendant to make a statement in writing, the defendant's father, who was present throughout, declined and asked for a lawyer. At trial the detective's oral testimony placed the defendant's statement before the jury.

Roger Dale Hill. See State v. Hill, 954 S.W.2d 725 (Tenn. 1997).[5]  Our

resolution of this issue is guided by the supreme court's pronouncement in Hill.

The Sentencing Reform Act of 1989 requires a culpable mental

state in order to establish an offense unless the statutory definition of the crime

"plainly dispenses with a mental element."  Tenn. Code Ann. § 39-11-301(b)

(1997).  Hill holds that a charging instrument which charges a crime that by its

statutory terms does not expressly require or plainly dispense with a culpable

mental state may be sufficient without explicitly alleging a culpable mens rea.

Hill, 954 S.W.2d at 726.   The supreme court said that such a charging

instrument is sufficient to support prosecution if

> (1)     the language of the indictment is sufficient to
> meet the constitutional requirements of notice to the
> accused of the charge against which the accused
> must defend, adequate basis for entry of a proper
> judgment and protection from double jeopardy;
>
> (2)     the form of the indictment meets the
> requirements of Tennessee Code Annotated section
> 40-13-202; and
>
> (3)     if the mental state can be logically inferred
> from the conduct alleged.

Hill, 954 S.W.2d at 726-727.

In this case, the indictment alleging aggravated sexual battery

closely follows the statutory language.  Tennessee Code Annotated section 40-

13-504, in pertinent part, describes aggravated sexual battery as

> unlawful sexual contact with a victim by the defendant
> . . . [and] [t]he defendant is aided and abetted by one
> (1) or more other persons; and [t]he defendant has
> reason to know that the victim is mentally defective,
> mentally incapacitated or physically helpless.

Tenn. Code Ann. § 39-13-504(a)(3)(B) (1997).

The indictment alleges that the defendant

did unlawfully and feloniously have sexual contact

---

[5]     We note that the defendant's brief in this case was filed three
months before the supreme court filed its decision in Hill.

6

with another person, to-wit: Lorriane Toth, and the said defendant was aided or abetted by one (1) other person and the defendant knew or had reason to believe that said victim was physically helpless. Tenn. Code Ann. § 39-13-504.

This language complies with the statutory form by stating the "facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. . . ." Hill, 954 S.W.2d at 728; Tenn. Code Ann. § 40-13-202 (1997). Furthermore, it is adequate to protect the defendant from double jeopardy.

Whether the requisite mental state may be inferred from the charging language requires more analysis. The crime of aggravated sexual battery of a physically helpless person has three elements (1) intentional sexual contact, (2) the existence of at least one aider and abettor, and (3) knowledge that the victim is physically helpless. Tenn. Code Ann. § 39-13-504(a)(3)(B) (1997). This court has previously observed that the mens rea for sexual contact is intentional. See e.g., State v. Howard, 926 S.W.2d 579, 584 (Tenn. Crim. App. 1996); Roger Lee Kimmel v. State, No. 02C01-9701-CR-00006, slip op. at 7 (Tenn. Crim. App., Jackson, Jan. 12, 1998) (Wade, J., concurring), pet, for perm. app. filed (Tenn., Feb. 24, 1998). As defined in the Criminal Code "sexual contact" is ""the intentional touching of the victim's . . . intimate parts . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6) (1997). This court has not previously considered the mens rea of the requirement that "the defendant is aided and abetted by one (1) or more other persons." Tenn. Code Ann. § 39-13-504(a)(3)(B) (1997). However, since the language of the statute requires only that an aider and abettor exist, we find that the legislature has clearly dispensed with any mens rea for this particular element. As to the third element, the statute itself provides that the accused must have "reason to know"

7

of the victim's physically helpless state. Tenn. Code Ann. § 39-13-504(a)(3)(B) (1997). Accordingly, the indictment in this instance must notify the defendant that he <u>intentionally</u> had sexual contact with a victim that he <u>knew or had reason to know</u> was physically helpless and that he was aided and abetted by at least one other person.

We find that the language of the indictment adequately supplies the <u>mens rea</u> in this instance. This court has previously found that the words "sexual contact" implies that the defendant intentionally touched the victim. <u>State v. Milton S. Jones, Jr.</u>, No. 02C01-9503-CR-00061, slip op. at 5 (Tenn. Crim. App. Jackson, Mar. 7, 1997), <u>pet. for perm. app. filed</u> (Tenn., May 6, 1997); <u>see</u> <u>also</u> <u>State v. John James</u>, No. 01C01-9601-CR-00016, slip op. at 19-20 (Tenn. Crim. App., Nashville, Mar. 27, 1997). Inclusion of the words "sexual contact" in the indictment necessarily implies an intentional <u>mens rea</u> for this element of the crime. <u>Milton S. Jones, Jr.</u>, slip op. at 5; <u>John James</u>, slip op. at 19. <u>But see</u> <u>Roger Lee Kimmel</u>, slip op. at 4 (The phrase "sexual contact" imports no mental state.).

As to the defendant's knowledge of the victim's helplessness, the defendant concedes that the indictment alleges that the defendant had "reason to know" that the victim was physically helpless. Accordingly, we find that the indictment satisfies the three <u>Hill</u> requirements to support prosecution for the offense of aggravated sexual battery.[6] The indictment in the instant case is sufficient to support the prosecution of the defendant for that offense.

The defendant next contends that the evidence in the record is insufficient as a matter of law to support his conviction for aggravated sexual battery. He argues that the state failed to prove that any one aided or abetted

---

[6] The defendant does not contend that the indictment failed to allege a culpable mental state for the offense of aggravated burglary or criminal trespass.

8

him in the commission of the crime. The state contends that under Tennessee law an aider and abettor is one who advises, counsels, procures or encourages another to commit a crime, see State v. Rodriguez, 752 S.W.2d 108, 111 (Tenn. Crim. App. 1988), and that Randy Steckley's actions, as proven at trial, satisfy this definition. We agree.

When there is challenge to the verdict based upon the sufficiency of the evidence, this court must review the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 317, 99 S. Ct. 2781, 2789; State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e). A guilty verdict accredits the testimony of the witnesses for the state, and on appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). In determining that sufficiency, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Since a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, a convicted defendant has the burden of demonstrating on appeal that the evidence is insufficient. State v, Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In order to convict the defendant of aggravated sexual battery as defined by Tennessee Code Annotated section 39-13-504(a)(3)(B), the state had to prove beyond a reasonable doubt that the defendant had intentional sexual contact with a victim whom he had reason to know was physically helpless. In addition, the state was required to prove that he was aided and abetted in this act by at least one other person. The defendant concedes that the evidence is sufficient to show that he intentionally removed the victim's undergarment and touched her genitals at a time when he knew she was disabled due to a physical

9

injury and had passed out after drinking excessively. He does contend, however, that no evidence exists to show that the co-defendant was an aider or abettor.

The resolution of the issue is determined by the legal definition of "aider and abettor."[7] This court considered a similar issue in State v. Woody J. Dozier, No. 02C01-9610-CC-00357 (Tenn. Crim. App., Jackson, Nov. 4, 1997), pet. perm. app. filed Jan. 29, 1998. Dozier was charged with rape, and the state sought to enhance the offense to aggravated rape through proof that he was aided or abetted by a co-defendant. Id., slip op. at 21. The proof at trial demonstrated that Turner, the co-defendant, was present and in a position to aid and assist his co-defendant at all times during the commission of the offense. The victim also testified that she overheard the two discussing her fate. Id., slip op. at 22. In concluding that the evidence was legally sufficient to support the jury's verdict, this court held:

> More than mere presence at the crime scene and an acquaintanceship with the perpetrator is necessary to support a finding that a person is an aider and abettor. Essary v. State, 210 Tenn. 220, 357 S.W.2d 342 (Tenn. 1962); see also People v. Rockwell, 188 Mich. App. 405, 470 N.W.2d 673 (Mich. App. 1991); State v. Brumley, 1996 Ohio App., LEXIS 1390, No. 89-P-2092 (Ohio App. 11 dist. Mar. 29, 1996). Moreover, mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting. But presence alone is enough if presence is intended to assist the perpetrator in the commission of the offense. See 1 F. Wharton, Criminal Law § 114 at 60 (1978).

> For Turner to aid or abet the appellant, it was unnecessary that he share the criminal intent of the perpetrator to commit the rape. However, he must have knowingly intended to assist, encourage, or

---

[7]    We recognize that in 1989, the legislature passed Tennessee Code Annotated section 39-11-401 which defines the criminal responsibility of one party for the acts of another. The Sentencing Commission comments to this section explain that the statute is a restatement of the principles of Tennessee common law concerning the liability of principals, accessories before the fact, and aiders and abettors. In State v. Carson, 950 S.W.2d 951 (Tenn. 1997), our supreme court held that the legislature intended to embrace the common law principles governing aiders and abettors in the new statute. 950 S.W.2d at 955-956. Therefore, we rely upon the common law definition of aiding and abetting as developed in Tennessee case law prior to the 1989 revision of the criminal code.

facilitate the design of the criminal actor.  Thus, there must be some evidence tending to show that the alleged aider and abettor, by word or deed, gave active encouragement to the perpetrator of the rape or, by his conduct, made it known to such perpetrator that he was standing by to lend assistance when and if it should become necessary.  See Flippen v. State, 211 Tenn. 507, 365 S.W.2d 895 (Tenn. 1993); see also State v. Penland, 343 N.C. 634, 472 S.E.2d 734, 743 (N.C. 1996), cert. denied __ U.S. __, 136 L.Ed. 2d 725, 117 S.Ct. 781 (1997).  The aider must, therefore, in some way "associate himself with the venture, participate in it as in something that he wishes to bring about, and seek by his actions to make it succeed."  United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938), quoted with approval in Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949).  Thus, although his intent to assist the perpetrator may be proven by circumstantial evidence and need not be demonstrated by express actions, the evidence must support the conclusion that the aider's presence lent support and encouragement to his companion(s).

Dozier, slip op. at 23-24.[8]

Whether or not a person present at the scene of a crime aided or abetted the perpetrator is a question of fact to be determined by the jury. Ultimately, the answer depends upon the circumstances surrounding the person's presence and his actions before, during and after the commission of the offense.  Id., slip op. at 24.  In this case, Randy Steckley was present throughout the commission of the sexual battery.  Moreover, the evidence is more than sufficient to show that Steckley shared defendant's intent to commit the offense and that he lent active support and encouragement.  See Dozier, concurring opinion by Tipton, J. at 1 (aider and abettor must act with an awareness of the principal's intent).   In fact, the defendant testified that Steckley ordered him to remove the victim's undergarments and that he touched the victim's genitalia so that Steckley could smell his hand.  The evidence in the record demonstrates beyond a reasonable doubt that the co-defendant advised, counseled, and even urged the defendant to commit sexual battery and that his presence lent

---

[8]    But see Dozier, concurring opinion by Tipton, J. at 1 (historically three requirements for aiding and abetting in Tennessee are (1) presence, (2) intent that the crime be committed, (3) participation, procurement, assistance, promotion of the offense).

11

encouragement and support.  See State v. Rodriguez, 752 S.W.2d 108, 111 (Tenn. Crim. App. 1988); Dozier, slip op. at 23-24.   The evidence in the record is more than sufficient to sustain the defendant's conviction for aggravated sexual battery as defined in Section 39-13-504(a)(3)(B).

Also, although the defendant has not challenged the sufficiency of the evidence to convict him of aggravated criminal trespass, we find that the record overwhelmingly supports the jury's conclusion that the defendant was guilty of committing this offense.  See Tenn. Code Ann. § 39-14-406 (1997).

In his final issues, defendant challenges his sentences.  The trial judge found him to be a Range I offender and ordered him to serve concurrent sentences of eleven years for aggravated sexual battery and eleven months and twenty-nine days for aggravated criminal trespass.  The defendant argues that the trial court improperly credited and weighed the enhancement factors, ignored the mitigating circumstances, and imposed excessive sentences.  We disagree.

When an accused challenges the length, range, or manner of service of a sentence, we must conduct a de novo review with a presumption that the determinations made by the trial court are correct.  Tenn. Code Ann. § 40-35-401(d) (1997).  The burden of showing that the sentence is improper is upon the appealing party.  Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1997) .  This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the sentencing range, the specific sentence, and the propriety of imposing a sentence involving an alternative to total confinement.  The trial court must

consider (1) any evidence presented at trial and the sentencing hearing, (2) the presentence report, (3) the sentencing principles. (4) the arguments of counsel, (5) any statements the defendant has made to the court, (6) the nature and characteristics of the offense, (7) any mitigating and enhancement factors, and (8) the defendant's amenability to rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), and 40-35-210(a), (b) (1997); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993). The trial court must begin with a presumptive minimum sentence. Tenn. Code Ann. § 40-35-210(c). The sentence may then be increased by any applicable enhancement factors and reduced in the light of any applicable mitigating factors. Tenn. Code Ann. § 40-35-210(d),(e).

The Act further provides that "[w]henever the court imposes a sentence, it shall place on the record, either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of facts as required by § 40-35-209." Tenn. Code Ann. § 40-35-210(f) (1997) (emphasis added). Even the absence of the enhancing and mitigating factors must be recorded. Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Comments. (1997). In the event the record fails to demonstrate the appropriate consideration by the trial court, appellate review of the sentence is purely de novo. Ashby, 823 S.W.2d at 169. In conducting our review, we must consider all the evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, arguments of counsel, the appellant's statements, the nature and character of the offense, and the appellant's potential for rehabilitation. State v. Ashby, 823 S.W.2d at 169; Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1997). If our review reflects that the trial court properly considered all relevant factors and the record adequately supports its findings of fact, this court must affirm the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In this instance, the trial court gave due consideration to the

13

applicable sentencing principles and factors and placed his findings on the record. We therefore review defendant's sentences with the presumption that the trial court's findings are correct.

The trial judge relied upon two enhancement factors in his sentencing determination: (1) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and (16) the crime was committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114 (1), (16) (1997).

Apparently, the parties suffered from some confusion as to which enhancement and mitigating factors the trial judge actually applied. The prosecution urged the trial court to find that the defendant was a leader in the commission of an offense involving two or more criminal actors, Tenn. Code Ann. § 40-35-114(2), and that the felony was committed while the defendant was on a type of release into the community. Tenn. Code Ann. § 40-35-114(13)(E). Prior to hearing the testimony, the trial court made some tentative comments indicating that he might look favorably on the state's argument for factor (2). However, at the close of the hearing, the trial judge did not conclude that the defendant was a leader in the offense. The trial court also declined to use factor (13) to enhance the sentence for aggravated sexual battery because the proof did not clearly establish that the defendant was under some type of supervision from the juvenile court. In mitigation, the trial court found that the defendant had rendered some assistance to the authorities in identifying and apprehending his co-defendant. He also gave some consideration to the defendant's youth although he did not find that the defendant lacked substantial judgment. The trial court also noted that the defendant demonstrated a sustained intent to violate the law and that the defendant is the kind of dangerous person that society fears.

14

In this appeal, the defendant contends that the defendant's record of criminal behavior is minimal, that nothing in the record indicates that he was a leader, and that his troubled childhood and dysfunctional home life are substantial factors in support of mitigation.

The record supports the claim that the defendant has had a difficult life. His parents are both alcoholics and, for various reasons, were unable to provide him and his brother with much stability or supervision. The defendant's juvenile record begins at age thirteen and includes vandalism of a teacher's car, truancy, underage consumption of alcohol, and inhaling paint. He was placed at Haslam Center in Knoxville in September 1993 and then at Cooper House in Chattanooga in June 1994. He returned home on April 7, 1995, just five weeks before he committed the present offenses. At the sentencing hearing, the defendant admitted that he used alcohol and inhaled paint even after his arrest in May, 1995.[9] He stated, however, that he had been "clean" for the past eighteen months. The defendant, who was then eighteen years old, had married and was the father of a three-month old daughter. He dropped out of school in the tenth grade, and he and the co-defendant were working for the defendant's uncle.

As a juvenile, the defendant accumulated a record that includes serious drug and alcohol abuse and impulsive, destructive behavior. During his three-year placement in highly structured programs, he did well, but when he returned home, he immediately resorted to his earlier behavior patterns of drinking, inhaling paint, and using marijuana. The trial court did not err by placing substantial weight on the defendant's record of prior criminal behavior.

There is an insufficient basis in the record, however, to justify the

---

[9] The defendant was the only witness who testified at the sentencing hearing.

15

use of factor (16). The defendant's acts caused the victim no physical injury, and the potential for serious bodily injury to either the victim or the victim's daughters is not demonstrated in the record.

Contrary to the defendant's argument, the trial judge did not ignore the mitigating factors. He acknowledged that the defendant had assisted the authorities, that the defendant's youth was entitled to some weight, and that his home environment had been much less than satisfactory. See Tenn. Code Ann. § 40-35-113(6),(9),(13) (1997). However, the trial court found that the two enhancement factors substantially outweighed the mitigators.

For a Range I offender, the appropriate sentencing range is not less than eight nor more than twelve years for aggravated sexual battery. Tenn. Code Ann. § 40-35-112(2) (1997). For aggravated criminal trespass of a habitation, a Class A misdemeanor, the maximum sentence is eleven months and twenty-nine days. This defendant, although youthful, has demonstrated that some restraint is necessary to protect society from his criminal behavior. Measures less restrictive than confinement have not proven effective, and we question the defendant's ability to rehabilitate himself while he is under the influence of those whose actions contributed to his downfall. A lengthy confinement is also necessary to avoid depreciating the seriousness of the offenses. However, the sentence in this case should be reduced to reflect the removal of enhancement factor (16). The sentence for aggravated sexual battery is modified to ten years. This sentence shall run concurrently with the eleven-month and twenty-nine day misdemeanor sentence.

Accordingly, we affirm the judgment of the trial court but modify the felony sentence.

_____
CURWOOD WITT, Judge

16

CONCUR:


_____
JOSEPH M. TIPTON, Judge


_____
JOE G. RILEY, Judge

17