# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs July 17, 2002

## STATE OF TENNESSEE v. AARON LEMBAR SMITH

**Direct Appeal from the Circuit Court for Dickson County**
**No. CR5191B    Allen Wallace, Judge**

---

**No. M2001-02532-CCA-R3-CD - Filed October 25, 2002**

---

Following a jury trial, Defendant, Aaron Lembar Smith, was found guilty of two counts of Class D felony burglary (a building other than a habitation), one count of Class E felony vandalism, two counts of Class D felony theft, and one count of Class D felony vandalism. One of the burglaries, the Class D felony vandalism, and one of the Class D felony thefts, involved an incident which occurred at Centennial Elementary School in Dickson. The other charges involved an incident at Buckner City Park, which is located on property adjoining Centennial Elementary School. In this appeal, Defendant challenges the sufficiency of the evidence to sustain his convictions for the burglary, vandalism, and theft convictions arising from the incident at Centennial Elementary School. He does not challenge the sufficiency of the evidence, or raise any other issues, regarding the remaining charges. After a thorough review of the record, we affirm the convictions for burglary, vandalism, and theft regarding the incident at Centennial Elementary School. However, our review of the record indicates errors in the judgments; as the sentencing hearing is not a part of the record, but the judgments on their face are erroneous, we remand these cases to the Circuit Court of Dickson County for amended judgments to be entered or for a new sentencing hearing, if necessary.

**Tenn R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court as to Convictions Affirmed; Judgments of the Circuit Court as to Sentences Reversed and Remanded.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which J. CURWOOD WITT and ALAN E. GLENN, JJ., joined.

Didi Christie, Brownsville, Tennessee (on appeal); and William B. (Jake) Lockert, III, District Public Defender, Ashland City, Tennessee (at trial and of counsel on appeal) for the appellant, Aaron Lembar Smith.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Kim G. Menke, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## BACKGROUND

In his appeal, Defendant does not challenge the sufficiency of the evidence as to the fact that a burglary, a theft, and vandalism occurred at Centennial Elementary School in Dickson, as alleged in the indictment. Defendant does, however, strongly assert that the State failed to prove, beyond a reasonable doubt, that he was one of the participants in the burglary, vandalism, and theft. Our review of the facts, therefore, will be confined to the testimony and other evidence concerning proof of the three participants in the incident at Centennial Elementary School.

At approximately 5:50 a.m. on July 7, 2000, Charlotte Wisdom, who worked for the "extended daycare" at Centennial Elementary School in Dickson, arrived on the premises of the school to open up the building for daycare. When she arrived, she observed a car parked under the canopy at the front door. She did not recognize it as belonging to a parent of any of the children. The car doors were open, the trunk was open, and a big screen television was inside the trunk. She testified that it was a maroon vehicle and that she saw two white males standing by the vehicle. When they observed her, they "took off running." One of the men had on a yellow shirt with the word "Paco" printed on it. The men ran around the building to Ms. Wisdom's left and went down a grass embankment.

Without a cellular telephone, Ms. Wisdom could not immediately call for assistance or report the suspicious behavior. She saw someone driving a truck in the adjoining city park, and went to the driver and asked to use his cellular phone to call 9-1-1. She reported the burglary in progress and was instructed to go back and get the license number of the vehicle parked by the front door to the school. She did so. She looked down to get something to write on, and when she again looked at the vehicle, she observed a black male come out of the school with something in his hand and apparently place it in the passenger side of the vehicle in front of the door.

The black male walked around the vehicle and looked inside the driver's window, and then apparently observed Ms. Wisdom. At the same time that Ms. Wisdom observed a police car coming from her left, toward the school, the black male ran back inside the school building. He appeared to have white surgical-type gloves on, and was wearing something "sleeveless" like a tank top or a pair of overalls. She stated that Defendant's shirt was dark. Ms. Wisdom did not again observe either the two white males or the black man who ran back inside the school building.

Several police officers arrived at the scene within moments. Corporal Robert Odom testified that he was dispatched at 5:56 a.m. to Centennial Elementary School. He observed a maroon vehicle under the canopy at the front entrance of the school. He also saw Ms. Wisdom beside her vehicle. Ms. Wisdom told Officer Odom the direction that the two white males had run. Odom walked over to the location where the men had run down the hill, and noticed that the two white males had run toward a nearby apartment complex known as Crosby Terrace West Apartments, which could be seen from the school property.

Brian Johnson, who, at the time, was the K-9 officer for the Dickson Police Department, brought his "certified" search dog to the scene of the crime. A perimeter was set up and Johnson, along with Officer Odom and Sergeant Mosley, entered the school to see if anyone could be found. No one was found inside of the building. However, the dog picked up the scent of two tracks outside the building. One track was picked up at the corner of the school building where Ms. Wisdom had stated that the two white males had run. This trail led directly to apartment 16-B of Crosby Terrace West Apartments. Officer Johnson also testified that there was a split of the tracks of a person or persons at a culvert between the school and Crosby Terrace West Apartments. The second track was heading back toward Crosby Terrace West Apartments after it had branched away from the first track, but the K-9 search dog became hot and tired and the tracking had to cease.

Booty Reed, director of the Dickson Housing Authority, testified that he was responsible for management of the Crosby Terrace West Apartments. He testified that apartment 16-B was leased to Crystal Merrill, and that apartment 7-B was leased to Jamie Simco. Richard Darden testified that he worked for an agency that "had connections" with Dale Merrill and Defendant. Dale Merrill had given his address as 16-B Crosby Terrace West, and Defendant had given his address as 7-B Crosby Terrace West.

Gary Brunett, the principal at Centennial Elementary School, testified that he examined the extensive damage done during the July 7, 2000 incident. He further testified as to the value of property taken and damages done to the property. Pamela Brock, a teacher at Centennial Elementary School, also worked in the extended daycare at Centennial Elementary during the summer of 2000. She had closed down the school at the end of the day on July 6, 2000. After the burglary, it was discovered that her name tag was missing. Ms. Brock testified that she had never been to Crosby Terrace West Apartments in her life.

Orville "Bubba" Sesler, an officer with the Dickson Police Department, testified that he was dispatched to Centennial Elementary School shortly after the incident was reported. While en route, he was redirected by the dispatcher to Crosby Terrace West Apartments. He arrived at 6:04 a.m. He stopped near apartment 16-B. Sesler observed the Defendant running toward apartment 16-B, stop at the door of 16-B, and begin beating on the door in an effort to have someone let him in. Defendant had come running from behind some of the other nearby apartments. Sesler approached the Defendant and brought him back to the police vehicle for investigation. Sesler went to apartment 16-B, along with an officer from the Dickson County Sheriff's Department, and knocked on the door. A female let the officers inside, and he immediately observed the yellow "Paco" shirt that was seen by Ms. Wisdom and reported to the police. The shirt was near the door.

When Sesler observed the Defendant, his legs were bleeding, and he was wearing short pants and a dark shirt. Sesler did not remember the type of shirt. Also, Sesler observed that the Defendant's body was "wet with sweat" like Defendant had been running. The proof at trial was that Defendant is a black male.

Jennifer Ann Smith testified that she had known Defendant for a few months, through her acquaintanceship with Crystal Merrill. She stated that Defendant resided in apartment 7-B with Jamie Simco. On the night of July 6, 2000, Ms. Smith was spending the night at apartment 16-B. She said that the Defendant, along with various other people, was also staying in apartment 16-B. Ms. Smith had left her car keys on the coffee table when she went to bed. Ms. Smith's maroon vehicle was the one used in the burglary which was found at the front entrance of Centennial Elementary School. A stipulation of the parties provided that no latent fingerprints belonging to the Defendant were found at Centennial Elementary School, but one latent fingerprint belonging to Dale Merrill was taken from a filing cabinet in the office area of the school.

Detective Mike Fleaner of the Dickson Police Department was the lead detective in the investigation of the burglary, vandalism, and theft incident at Centennial Elementary School. Pam Brock's name tag was found on a sidewalk directly in front of apartment 16-B. Detective Fleaner testified regarding a taped and transcribed statement given by Defendant on the morning of July 7, 2000 at the Dickson Police Department. In this statement, Defendant did not admit to participating in the crimes at Centennial Elementary School. However, Detective Fleaner testified that, during his conversation with Defendant prior to the tape recording being made, Defendant stated the following: Defendant told Fleaner that he (Defendant) was not going to admit to being a lookout "on tape" because "any half-ass lawyer"could get him out of "this sh--." Defendant admitted to Fleaner that he (Defendant) was at the school and ran away from it. Defendant stated that two of the people involved were "Benji" and "Joker," but did not give the identity of a third person.

In his transcribed statement, Defendant denied any involvement in the burglary. However, he stated that "Benji" and "Joker" burglarized the building and committed the vandalism and theft. Defendant told Detective Fleaner that he knew they were going to burglarize the school, but he just watched and did not participate. He admitted to Fleaner that he was "at the school" and ran when he saw the state trooper drive up. Defendant admitted to having previously made the statement to Detective Fleaner, when advised near the scene that a search dog was going to go into the school, that "man, there's nobody else in the school. I guarantee there ain't nobody else in school." However, Defendant explained that he meant that he assumed the two men inside the school would also see the police drive up, as he did, and would run out.

Trooper Chip Miller, of the Tennessee Highway Patrol, testified that he was dispatched to the school after the report of a burglary in progress. He gave a detailed description and identified, through photographs, the route taken by him to arrive at the school grounds. Trooper Miller's testimony was that a person sitting in the area where Defendant claimed to be sitting, would have been unable to see the highway patrol car arrive, due to the contour and shape of the premises.

Dale Merrill was called by defense counsel to testify at the trial. Merrill had already pled guilty because of his participation in the burglary, vandalism, and theft at Centennial Elementary School. Merrill testified that he, Rodney Nichols, and Tim Justice broke into Centennial Elementary School in the early morning hours of July 7, 2000. Merrill stated that Defendant was not present. Proof showed that Dale Merrill and Tim Justice are white males. When questioned as to Rodney

Nichols' race, Merrill testified that "I believe he's mixed. I don't know what he's mixed with, but he's light-skinned." Merrill testified that the three first began shooting Merrill's .22 caliber rifle around the school, and shot out a couple of the windows. They began looking inside the school and saw televisions and computers. He said it was a spur-of-the-moment decision to break in and get items to make some money. Merrill testified that he sent Rodney Nichols to go back to apartment 16-B to get Tim's Blazer automobile. However, Nichols came back with Jennifer Smith's vehicle. Merrill stated that he and Tim Justice were loading a television and a computer in the vehicle and Rodney Nichols was inside the school. He observed a car come around the corner and he and Justice began running. Merrill ran to apartment 16-B at Crosby Terrace West Apartments. He took off his yellow shirt, laid it by the door, and climbed into the closet attic. He testified that Rodney Nichols was wearing a shirt like a tank top during the burglary. During cross-examination, Merrill admitted to having been previously convicted of prior felonies, including theft, burglary, and vandalism. He had known Defendant for about five years. Merrill could not explain why Defendant would have given a statement to police that "Benji" and "Joker" had committed the burglary at the school.

Merrill's testimony was impeached with testimony from his own guilty plea submission. At that hearing, he stated that it was he, rather than Nichols, who had taken Jennifer Smith's vehicle to the school. Merrill had also testified at his guilty plea submission that Tim Justice was inside the school when the first car drove up (Ms. Wisdom's vehicle) and that he and Rodney Nichols ran off together away from the school. He claimed that he had the names mixed up at the guilty plea submission hearing.

Detective Fleaner was again called as a witness during the Defendant's proof. He identified a shirt and a pair of pants that Defendant was wearing at the time he was taken into custody on the morning of July 7, 2000. He also testified that mud on the clothing could be attributed to crawling under a fence which was between Centennial Elementary School and Crosby Terrace West Apartments. The shirt was not a sleeveless or tank top shirt.

## ANALYSIS

### I. Sufficiency of the Evidence

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the

State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *Id.* In *State v. Grace*, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987); *State v. Gregory*, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). However, in order for this to occur, the circumstantial evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt. *Tharpe*, 726 S.W.2d at 900. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." *Id.* (quoting *Pruitt v. State*, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)).

While following the above guidelines, this court must remember that the jury decides the weight to be given to circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958); *see also Gregory*, 862 S.W.2d at 577; *State v. Coury*, 697 S.W.2d 373, 377 (Tenn. Crim. App. 1985); *Pruitt*, 460 S.W.2d at 391.

While the evidence was circumstantial, it was sufficient to support the convictions for burglary, vandalism, and theft at Centennial Elementary School. Defendant admitted his presence at the scene. He was observed running to apartment 16-B by Officer Sesler within minutes of the burglary being reported. His legs were scratched and he seemed to be in a panic to get inside the apartment. A reasonable jury could conclude beyond a reasonable doubt that Defendant was the black male who was observed by Ms. Wisdom coming out of the school and placing something into the vehicle parked under the canopy, who then ran back into the school at about the time the first police car arrived. Even though Ms. Wisdom thought that the black male had on a sleeveless shirt or overalls, she did say it was a dark shirt. Defendant was wearing a dark shirt when observed banging on the door of apartment 16-B by Officer Sesler. There was also sufficient proof presented by the State to show the proximity of the school to Crosby Terrace West Apartments, with the clear

inference that a person could run from the school to the apartments in the time between Ms. Wisdom observing the perpetrator at the school and when Officer Sesler saw Defendant running to apartment 16-B and banging on the door to get inside. There was also proof of doors into the school that could not be observed at the time the officers first began arriving.

Even though not specifically raised by Defendant in this appeal, we have reviewed the evidence pertaining to the burglary, vandalism, and theft at Buckner City Park. There was testimony that a building used at the city park was burglarized. There was also sufficient testimony of theft of property and vandalism. Furthermore, witnesses testified that Defendant admitted his involvement in the burglary at the Buckner City Park building, and that he was seen in possession of some of the stolen property shortly after the occurrence of the crime.

Accordingly, we affirm all of Defendant's convictions for burglary, theft, and vandalism.

## II. Sentencing

Even though not raised by the State or the Defendant in this appeal, we have reviewed the judgments, and based upon our review, we are compelled to reverse the judgments insofar as they pertain to sentencing, and remand for entry of appropriate amended judgments or for a new sentencing hearing, whichever is deemed appropriate, even though we affirm the convictions.

The transcript of the sentencing hearing is not a part of the record. However, the pre-sentence report and the judgments are included in the record. The jury found Defendant guilty of five Class D felonies, and one Class E felony.

According to the pre-sentence report, Defendant had three prior convictions for Class D felony theft, and two prior convictions for burglary of a vehicle, a Class E felony. The pre-sentence report indicates that the "date of events/arrest" was October 3, 1999, and the date of conviction was May 12, 2000 for each of the offenses. They were all included in Dickson County Circuit Court Case No. 4916. It is not clear from the record whether all of the offenses occurred on the same date or on different dates. In any event, each judgment for the convictions presently on appeal indicates that Defendant was being sentenced as a multiple offender. In addition, the judgment for Count 5 of the indictment, in which Defendant was charged with Class C felony vandalism, and which the jury returned a verdict for Class D felony vandalism, reflects that Defendant was convicted for a Class C felony vandalism, contrary to the jury's verdict.

Tennessee Code Annotated section 40-35-106(a)(1) defines a "multiple offender" as a defendant who has received a minimum of two, but not more than four, prior felony convictions within the conviction class, a higher class, or within the next two lower felony classes, where applicable. Since Defendant, in the present case, was sentenced for five Class D felonies and one Class E felony, his prior criminal record of three Class D felonies and two Class E felonies, would normally justify sentencing as at least a multiple offender. However, Tennessee Code Annotated section 40-35-106(b)(4) provides that convictions for multiple felonies committed as part of a single

-7-

course of conduct within twenty-four hours constitutes one conviction for the purposes of determining the number of prior convictions, unless the criminal acts result in bodily injury or threatened bodily injury to the victim or victims.

Tennessee Code Annotated section 40-35-106(c) states that "[a] defendant who is found by the court beyond a reasonable doubt to be a multiple offender *shall* receive a sentence *within Range II*." (emphasis added).

Tennessee Code Annotated section 40-35-112(b)(4) provides that a "Range II" sentence for a Class D felony is not less than four years nor more than eight years. Also, Tennessee Code Annotated section 40-35-112(b)(5) provides that a Range II sentence for a Class E felony is not less than two nor more than four years.

The judgment for count 1 of the indictment, wherein Defendant was convicted of burglary, reflects a sentence of three years as a multiple offender for a Class D felony. However, the minimum sentence, as stated above, for a Range II multiple offender of a Class D felony is four years. The judgment reflecting the conviction in count 2 for the Class E felony conviction for vandalism, reflects a one-year sentence as a Range II multiple offender. However, the minimum sentence, by statute, is two years. Likewise, the judgment for count 3, reflecting Defendant being sentenced as a multiple offender for the Class D felony theft, reflects a sentence of two years, and the minimum, by statute, for a Range II multiple offender, is four years. The judgment for the conviction of count 4, for a Class D burglary as a multiple offender is for a sentence of two years, with the minimum sentence for that offense as a Range II multiple offender being four years.

As stated above, the judgment for count 5 reflects conviction of a Class C felony, but the jury verdict reflects a finding of guilty of Class D felony vandalism. Defendant was sentenced to five years for the conviction in count 5. The sentence of five years is within the permissible range for sentencing as a Range II multiple offender for a D felony, but not for a C felony, which has a minimum sentence, by statute, of six years. *See* Tenn. Code Ann. § 40-35-112(b)(3). Finally, the judgment for count 7 reflects a conviction for Class D felony theft and sentencing as a multiple offender to two years incarceration. Again, the minimum sentence for a Range II multiple offender for a Class D felony is four years.

All of the sentences on appeal in this case were ordered to be served consecutively to the sentence Defendant received in Dickson County Circuit Court No. 4916, which constituted his prior convictions referenced above. In addition, counts 1, 2, and 3 were ordered to be served concurrently with each other, but consecutive to concurrent sentences in counts 4, 5, and 7.

In summary, the judgments reflect that if Defendant was appropriately sentenced as a Range II multiple offender, the sentences are not within the statutorily-prescribed range of punishment in counts 1, 2, 3, 4, and 7. The judgment in count 6 reflects conviction for a Class C felony, but the jury's verdict reflects a finding of guilt of a Class D felony.

We are therefore compelled to reverse the judgments insofar as sentencing is concerned, and remand this case for the trial court to enter an amended judgment reflecting that Defendant be sentenced as a standard Range I offender, if appropriate, and a correct reflection of his sentencing status. In the alternative, if Defendant is appropriately classified as a Range II multiple offender, the trial court is to conduct a new sentencing hearing to determine the length of the sentence in each case and whether consecutive or concurrent sentencing is proper once Defendant is sentenced within the range of punishment as a Range II multiple offender.

## CONCLUSION

For the foregoing reasons, we affirm the convictions of Defendant for burglary, vandalism, and theft as reflected by the jury's verdict. The judgment in count 5 should be amended to reflect a conviction for Class D felony vandalism rather than Class C felony vandalism. In addition, we reverse the sentences and remand this case for the trial court to amend the judgments to show Defendant's sentencing as a standard Range I offender if he was inappropriately designated as a Range II multiple offender. If Defendant was appropriately designated as a Range II multiple offender, the trial court shall conduct a new sentencing hearing and impose sentences within Range II. The trial court shall then determine consecutive or concurrent sentencing based upon the sentences received following the new sentencing hearing.

_____
THOMAS T. WOODALL, JUDGE

-9-