**STATE of Tennessee, Appellee,**

v.

**Sidney Ray BOHANAN, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Nov. 19, 1987.

Permission to Appeal Denied by Supreme Court Feb. 1, 1988.

Charles W. Wade, Lewisburg, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Charles E. Bush, Asst. Atty. Gen., Nashville, James S. Kidd, Dist. Atty. Gen., Charles Lee, Jack Bomar, Asst. Dist. Attys. Gen., Fayetteville, for appellee.

## OPINION

JONES, Judge.

The appellant, Sidney Ray Bohanan, was convicted of two counts of burglary third degree while in possession of a firearm, grand larceny, and carrying burglary tools. The trial judge found the defendant was a standard offender and imposed the following Range I sentences: confinement in the Department of Correction for a period of twelve (12) years for each count of burglary third degree, confinement in the Department of Correction for a period of six (6) years for grand larceny, and confinement for a period of five (5) years for carrying burglary tools. The trial judge ordered the sentences to be served consecutively to each other.

In this Court the defendant has raised four (4) issues. The defendant contends (a) the evidence is insufficient to sustain his respective convictions, (b) he was denied the effective assistance of counsel at his preliminary hearing, (c) the failure of the district attorney general to produce the preliminary hearing tape for review by counsel impaired counsel's ability to cross-examine the witnesses against him, and (d) the trial court committed error of prejudicial dimensions in refusing to give a special request concerning the presumption of ownership of contraband found in a motor vehicle.

## SUFFICIENCY OF THE EVIDENCE

During the early morning hours of February 5, 1986, people working inside the Wal–Mart Store, located in the Marshall County Plaza, heard loud noises coming from an adjoining building and called the police. Officer Reed of the Lewisburg Police Department responded to the call. When he arrived at the Plaza, he noticed a motor vehicle that had not been there previously. He proceeded to the rear of the buildings, but did not observe anyone or notice anything unusual. Later, he noticed the vehicle had left. He returned to the rear of the building a second time, this time with his lights off, and as he drove by a business known as Fun Land, he saw light coming through the wall. He stopped to investigate.

When he approached the rear wall of the building, he discovered there was a large hole in the wall. It was covered with a stereo or speaker stand. He entered the business through the hole and discovered that a second hole had been made in the interior wall separating Fun Land and the Curtis Mathes Home Entertainment Center. Officer Reed found a Go Devil combination axe and sledge hammer as well as a tire tool adjacent to the interior wall. Fifteen video cassette recorders, taken from the Curtis Mathes store, were found

stacked next to the interior wall and at various other places between the hole in the interior wall and the hole in the rear wall. The recorders were valued at $8,000. The operators of Fun Land the Curtis Mathes store were notified of the burglary.

When the operator of the Curtis Mathes store arrived, he advised Officer Reed that three men had entered the store the previous day. They did not seem interested in purchasing any merchandise, and attempted to keep their back to the employees of the business. The wife of the operator, noticing the suspicious nature of the men, made a note that the men left the Plaza in a bronze Monte Carlo or Pontiac bearing license number 2X0282.

While the officers investigated at the scene of the burglary, the operator of the Curtis Mathes store went to the Cedar Hills apartment complex, which is adjacent to the Marshall County Plaza. He returned to the Plaza, notified the officers that he had found the suspicious vehicle, and the officers returned to the apartment complex with him.

The officers found a bronze colored Pontiac automobile parked in the apartment complex. The license number given by the operator of the Curtis Mathes store matched the license plate of the vehicle with the exception of one digit. The number given by the operator was 2X0282 while the tag number was 2X0Z82. The "Z", contained on the license plate, was very similar to the "2".

An inspection of the interior of the vehicle revealed it was occupied by two individuals. The officers found the defendant lying on the back seat of the vehicle. A search of the back seat revealed a pair of gloves, a coat, and an automatic pistol, which was loaded, a pair of muddy shoes, and a duffle bag containing a brass torch tip. David Hunt, a co-defendant, was found "hunched down" in the front seat of the vehicle. A search of this area of the vehicle revealed two loaded pistols, thin leather gloves, and a pocket beeper. Both of the individuals were wet. A search of

the trunk of the vehicle revealed two pairs of tin snips, a screwdriver, a hacksaw blade, a keyhole saw, channel locks, several assorted drill bits, an acetylene torch with tanks, and a small rubber flashlight. There was no tire tool contained in the trunk of the vehicle.

The coat found in the back seat of the vehicle with the defendant contained large quantities of drywall material, fiberglass, and fragments from cinder or concrete blocks. An analysis of the drywall material and fiberglass revealed that both were consistent with and matched the drywall composition and fiberglass found inside the interior wall between Fun Land and Curtis Mathes. A large quantity of cinder block fragments were found on the defendant's coat. These fragments were found to be consistent with the content of the cinder blocks and concrete in the back wall of Fun Land. The material found adhering to the keyhole saw found in the trunk of the vehicle was consistent with the materials contained in the interior wall.

The weapons found in the possession of the defendant and David Hunt were stolen from Judge's Gun Shop on the evening of November 8, 1985, or early morning of November 9, 1985. Sixty handguns, one semi-automatic Uzi, and three rifles were taken in the burglary. The value of these weapons was approximately $50,000. The defendant and David Hunt were identified as business invitees of the store on the evening of November 8, 1985.

David Hunt testified on behalf of the defendant. He stated that the defendant was left in the motor vehicle while Hunt and a Bob Tenner, a friend of Hunt's, were ostensibly going to visit Tenner's girl-friend. Instead, Hunt and Tenner committed the burglaries in question. Something told them to leave the building; and, as they were leaving, they saw the police car cruising behind the buildings situated in the Plaza. After the cruiser left Hunt and Tenner returned to the vehicle in the Cedar Hills Apartments.

The dampness of their clothing, the mud contained on their shoes, and the absence

of the tire tool were attributed to a flat tire which they experienced earlier in the evening.

According to Hunt, Bohanan was asleep in the back seat. The pistols belonged to Hunt, not Bohanan. The coat found in the back seat belonged to Tenner, not Bohanan. The gloves found in the back seat belonged to Tenner, not Bohanan. Hunt testified he was a plumber and pipefitter, and the tools found in the trunk belong to his employer.

When the defendant challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e). This rule is applicable to findings of guilt based upon direct as well as circumstantial evidence. *Farmer v. State*, 208 Tenn. 75, 343 S.W.2d 895, 897 (1961); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn.1977).

In determining the sufficiency of the evidence we do not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978); *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978); *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973); *Braziel v. State*, 529 S.W.2d 501, 505 (Tenn.Crim.App.1975). Nor may we substitute our inferences for those drawn by the trier of fact in circumstantial evidence cases. *Liakas v. State*, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn.Crim.App.1978). To the contrary, we are required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage*, supra.

Questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *State v. Cabbage*, supra; *State v. Grace*, supra; *Braziel v. State*, supra; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). In *Grace* our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State," 493 S.W.2d at 476.

■ A criminal offense may be established exclusively by circumstantial evidence. *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451 (1958); *Duchac v. State*, 505 S.W.2d 237 (Tenn.1973); *State v. Hailey*, 658 S.W.2d 547, 552 (Tenn.Crim.App. 1983); *State v. Lequire*, 634 S.W.2d 608, 614 (Tenn.Crim.App.1981). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypotheses save the guilt of the defendant." *State v. Crawford*, 225 Tenn. 478, 470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *State v. Crawford*, supra, 470 S.W.2d at 613.

In the case *sub judice* there is sufficient evidence contained in the record from which a rational trier of fact could conclude that the defendant was guilty of two counts of burglary third degree, grand larceny, and carrying burglary tools. Tenn.R. App.P. 13(a); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The facts and circumstances are "so closely interwoven and connected with that the finger of guilt is pointed unerringly at the defendant and the defendant alone" as one of the people who committed these offenses. See *State v. Crawford*, supra, 470 S.W.2d at 613.

## REPRESENTATION AT PRELIMINARY HEARING

The co-defendant, David Hunt, testified that David Adams represented the two of

them at the preliminary hearing. Later, Adams advised Hunt and the defendant he could not continue to represent them because his law firm represented the Curtis Mathes Home Entertainment Center. No other evidence appears in the record regarding this issue or the possibility of a conflict of interest. The defendant contends he was denied the effective assistance of counsel at the preliminary hearing because of the conflict of interest.

There is nothing contained in the record which establishes that counsel's law firm was representing Curtis Mathes before or during the time frame when the preliminary hearing was conducted. The conflict may have arisen after the preliminary hearing was conducted and the defendant was awaiting action by the Marshall County Grand Jury. Nor is there any evidence regarding the quality of representation afforded by Mr. Adams at the preliminary hearing.

A person seeking relief on the ground of ineffective assistance of counsel is required to prove (a) the services rendered or advice given by counsel fell below "the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975), and (b) the unprofessional conduct or errors of counsel "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). In our opinion the defendant has failed to carry his burden of proof. The evidence in the record does not support either requirement.

This issue is without merit.

### ABSENCE OF AUDIO RECORDING OF PRELIMINARY HEARING

During the course of the trial counsel stipulated that the clerk gave the audio recording of the preliminary hearing to the district attorney general for safekeeping. While in the possession of the district attorney general, the tape was either lost or misplaced. Since trial counsel was not present at the preliminary hearing, and did not have the benefit of listening to the recording prior to trial, the defendant now contends trial counsel's ability to cross-examine the witnesses was severely impaired.

According to the record before us, this issue was not raised prior to trial. The first mention that the tape had been lost or destroyed occurred immediately before the defendant rested his case. Counsel for the defendant stated at a bench conference:

There was taped testimony taken of the preliminary hearing and we need to get in the record that the tapes were lost. He messed up and misplaced them. They are gone and we never did get a chance to hear them.

We note that trial counsel did not state the defendant had been prejudiced in any respect.

When questioning a police officer, counsel questioned the officer about the difference in his testimony at the preliminary hearing and his testimony at the trial.

■ This issue has been waived. Tenn. R.App.P. 36(a).

■ However, addressing this issue on the merits, we hold that loss or misplacement of the audio recording in this instance constituted harmless error, if error at all. See *State v. Butts*, 640 S.W.2d 37, 38 (Tenn.Crim.App.1982). The evidence contained in the record is so compelling on the question of the defendant's guilt a recording of the preliminary hearing would not have aided defense counsel in this cause.

This issue is without merit.

### FAILURE TO INSTRUCT JURY

The motor vehicle occupied by Hunt and the defendant was owned by a Patricia Nichols, who apparently resided in Nashville. Hunt testified that the tools found in the trunk of the vehicle were owned by his employer.

■ The defendant asked the trial judge to give the following instruction:

I charge you that it is the law in this State that where contraband or other illegal property is found in an automobile, it is presumed to belong to the owner or other person legally in charge of the automobile, except such property found upon the person of a passenger, guest or other person in the automobile, or so closely connected with such other person as to be in his or her immediate possession or control.

The trial court refused this instruction. However, the trial court gave a complete instruction concerning the offense of carrying burglar's tools.

The trial court did not commit error in refusing to grant the instruction. It must be remembered that only the motor vehicle belonged to Ms. Nichols. The co-defendant, Hunt, testified that the tools were owned by his employer; and the weapons found inside the car were purchased by him in Nashville. It was also established beyond question that the defendant participated in the burglary, a keyhole saw found in the trunk was used in the burglary, and one of the weapons was found within the reach of the defendant.

When the instructions given by the trial judge are a correct statement of the law, and the instructions fully and fairly set forth the applicable law, it is not error for a trial judge to refuse to give a special instruction requested by a party. *State v. Haynes*, 720 S.W.2d 76, 85 (Tenn.Crim.App. 1986). Nor is it error for a trial judge to not give an inaccurate special request or one that is not applicable to the facts of the case. See *State v. Moffett*, 729 S.W.2d 679, 681 (Tenn.Crim.App.1986).

This issue is without merit.

The judgments of the trial court are affirmed.

DUNCAN, J., and WILLIAM S. RUSSELL, Special Judge, concur.