# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 26, 2005

## STATE OF TENNESSEE v. WILLIE BOB KING

**Appeal from the Circuit Court for Warren County**
**No. F-9178     Larry B. Stanley, Jr., Judge**

---

### No. M2004-00548-CCA-R3-CD - Filed May 25, 2005

---

The Defendant was convicted by jury verdict of two counts of aggravated burglary, two counts of aggravated assault, and misdemeanor resisting arrest. The trial court sentenced the Defendant as a Range II offender to ten years for each felony conviction and six months for the misdemeanor conviction, with the first three felony conviction sentences to be served consecutively and the remaining sentences to be served concurrently, resulting in an effective sentence of thirty years. On appeal, the Defendant raises four issues: 1) the evidence was insufficient to support his two aggravated burglary convictions and one aggravated assault conviction; 2) the trial court erred in failing to allow the defense to impeach the testimony of one of the State's witnesses by means of a prior juvenile conviction; 3) the trial court erred in imposing excessive sentences in violation of Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531 (2004); and 4) the trial court erred in imposing consecutive sentences. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Dan Bryant, Public Defender, McMinnville, Tennessee, for the appellant, Willie Bob King.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; and Dale Potter, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The convictions at issue in this appeal stem from an incident which occurred at the Country Place Apartments in McMinnville during the early morning hours of July 25, 2002. The Defendant, Willie Bob King, broke into his wife's apartment and assaulted both her and a neighbor who came to her aid, and then broke into a neighboring apartment where his wife sought refuge. When the police arrived at the scene, the Defendant first fled and then fought with the officers as they placed him under arrest. A Warren County grand jury returned an indictment against the Defendant

charging him with two counts of aggravated burglary, two counts of aggravated assault, and one count of resisting arrest. The Defendant was tried by a jury.

At trial, Ms. King (the victim) testified that she heard a knock at her front door sometime around 3:00 on the morning of July 25, 2002. She went to the window, saw it was her husband, and told him to leave.[1] She then testified that the Defendant "busted in like a fool," diving through a glass window into her apartment. The victim stated she then "hit [the Defendant] with [a] hickory stick" until he overpowered her and began to choke her. The victim testified that at some point the Defendant drug her outside the apartment and threw her against a "big old concrete thing," and she broke three ribs. However, the victim also stated that the Defendant jammed the front door so it would not open, and she screamed for help from inside her apartment until her neighbor's son kicked in the front door to her apartment and confronted the Defendant.

The victim further testified that when her neighbor's son, Mr. Knowles, came in to her apartment, he "pulled" her away from the Defendant, and the two men began to scuffle. During this altercation, the Defendant pulled out a knife and cut Mr. Knowles. The victim's neighbor, Ms. Stewart, then came in and ushered the victim next door to her own apartment, and, according to the victim's testimony, hid the victim in a closet. The victim testified that a short time later the Defendant broke into her neighbor's apartment and "tried to get me, but he didn't know where I was at in their house." At the Defendant's sentencing hearing, the victim again stated that the Defendant never found her hiding in the closet, and never directly threatened or assaulted her while she was in her neighbor's apartment.

Mr. Knowles, the fifteen-year-old son of Ms. Stewart, testified that he was watching TV the morning of the incident when he heard a woman screaming. He went outside and discovered the screams were coming from inside the victim's apartment. The door to the victim's apartment would not open, so he kicked it in and observed the Defendant on top of the victim, hitting her. When Mr. Knowles entered the apartment, the Defendant got off the victim and verbally confronted him, to which he responded: "I don't appreciate you jumping on no woman." At this point the two began to scuffle and the Defendant pulled out a butterfly knife. Mr. Knowles stated that he "thought [the Defendant] was going to kill me," but admitted the Defendant actually "barely touched" him with the knife, because he quickly moved away.

Mr. Knowles further testified that while the two were involved in this altercation, his mother came in to the victim's apartment and took the victim away. After the Defendant pulled out the knife, Mr. Knowles stated that he left the apartment. The Defendant followed him outside, but did not pursue him. Mr. Knowles further testified that a short time later he returned to the apartment complex and found the Defendant in the parking lot, and the two became involved in a second altercation. This second fight had just concluded when the police arrived and the Defendant fled.

[1]Several days prior to this incident, the victim was granted an Order of Protection prohibiting the Defendant from "committing further acts of abuse or threats of abuse" against the victim, and restraining the Defendant from "any contact" with her, including "communicating with [the victim], directly or indirectly, or coming about [the victim] for any purpose." This protection order was in effect when the crimes at issue in this case were committed.

While Mr. Knowles was only fifteen at the time of the incident, the record reflects that he was about 6'1" and weighed approximately 220 pounds. On cross-examination, Mr. Knowles stated he did not "pull" the victim away from the Defendant.

Ms. Stewart testified that she lived next door to the victim. The night of the incident she witnessed her son and the Defendant in an altercation, assisted the injured victim to her apartment, and locked her door. Shortly thereafter the Defendant broke into her apartment looking for the victim. Ms. Stewart testified at trial that the Defendant found the victim in her apartment, "provoked her and started hitting her," and she called 911 to report the incident. However, at the Defendant's sentencing hearing, Ms. Stewart denied she stated at trial that the Defendant hit the victim in her apartment, and testified: "[w]hether [the Defendant] was going to hit [the victim] or not, I don't know. He was mad and he was searching for her."

On cross-examination, Ms. Stewart admitted she was once convicted of theft. She also stated that the Defendant did not harm her, her seven children, one grandchild, or her babysitter, all of whom were inside her apartment at the time of the incident. Ms. Stewart further testified that she and her babysitter managed to get the Defendant out of her apartment the night of the incident, but he lingered in the parking lot until the police arrived.

Officer Robert Hutchins of the McMinnville City Police Department testified that he received a 911 dispatch call the morning of the incident reporting a suspect was beating his wife and a juvenile had been cut with a knife. Officer Hutchins stated that upon arriving at the apartments, he observed a group of people in the parking lot and heard someone say "police." The Defendant then turned, looked at Officer Hutchins, dropped something on the ground and ran. Officer Hutchins shouted "Police, stop" three times, but the Defendant did not stop until he had been run down. Officer Hutchins testified that the Defendant had to be tackled, and fought with him and another officer until they managed to handcuff him. Officer Lisa Norris of the McMinnville police testified that when she arrived at the scene, Officer Hutchins was pursuing the Defendant. She observed the Defendant "turn" on Officer Hutchins, and she rushed to assist in the arrest. She stated that the Defendant "fought" the two officers and he smelled of alcohol.

Officer Hutchins further testified that he recovered the object the Defendant dropped in the parking lot, which turned out to be a butterfly knife. He also observed that the window to the victim's apartment was broken. The majority of the glass was on the inside, indicating that the window was pushed in by someone on the outside. Officer Hutchins also stated that the victim was visibly injured, explaining she was "bleeding from the mouth" and had "contusions about her face."

At trial, the Defendant, informed of his rights by the court, declined to take the witness stand. The defense offered no proof, but submitted a motion for a directed verdict, which the court denied. The jury returned a verdict of guilty on all five offenses as charged in the indictment. The Defendant timely filed a motion for a new trial, which was denied following an evidentiary hearing. This appeal followed.

## ANALYSIS

### I.  Sufficiency

In his first issue on appeal, the Defendant claims the evidence is insufficient to support both of his aggravated burglary convictions and one aggravated assault conviction.[2]  As to the burglary convictions, the Defendant asserts that the State failed to prove he entered both the victim's and Ms. Stewart's apartments with the "intent" to commit an assault therein as charged in the indictment.[3]  Also, the Defendant claims that the defense of self-defense should have negated any evidence that he assaulted the victim as charged in count three, and therefore this conviction should also be reversed.  We disagree.

#### A.  Standard of Review

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."  A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt.  See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom.  See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599.  A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory.  See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence.  See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659.  Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact.  See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

#### B.  Aggravated Burglary Convictions

The Defendant was convicted of two counts of aggravated burglary for breaking into both the victim's and Ms. Stewart's apartments.  Tennessee defines burglary, in relevant part, as follows:

A person commits burglary who, without the effective consent of the property owner:

---

[2] The Defendant does not challenge his conviction for resisting arrest or the sufficiency of evidence of his conviction for aggravated assault against Mr. Knowles.

[3] The Defendant concedes that he entered both apartments unlawfully.

Enters a building other than a habitation (or any portion thereof) not open to the public, with the intent to commit a felony, theft or assault[.]

Tenn. Code Ann. § 39-14-402(a)(1), (3). The offense of burglary is elevated to aggravated burglary when the building unlawfully entered is a "habitation." Tenn. Code Ann. § 39-14-403.

The Defendant concedes that in both instances he unlawfully entered the two apartments. He nevertheless asserts that the evidence presented at trial was insufficient for a reasonable jury to conclude that he had the intent to commit assault inside either apartment. First, the Defendant claims that his intent upon breaking into the victim's apartment was merely to "speak with his wife," as verified by the fact that he first knocked on the door and attempted to gain lawful entry. He further claims that "[i]t is uncontraverted that [the Defendant] only grabbed [the victim] after she started beating him," thus, the Defendant argues, any actual assault of the victim was self-defense.

The Defendant also argues that the State failed to prove he broke into Ms. Stewart's apartment with the intent to assault his wife. Moreover, the Defendant argues, the contradictory testimony of Ms. Stewart and the victim as to whether he actually hit the victim in Ms. Stewart's apartment would prevent a jury from finding "beyond a reasonable doubt that [the Defendant] entered Ms. Stewart's apartment with the intent to assault Ms. King." Thus, the Defendant argues, the facts and circumstances presented at trial were not "so strong and cogent as to exclude every other reasonable hypothesis" as to the Defendant's intent, and therefore the evidence was insufficient to support both of his aggravated burglary convictions. State v. Bohanan, 745 S.W.2d 892, 895 (Tenn. Crim. App. 1987).

It is well established that "[i]ntent is rarely proven by direct evidence, and the trier of fact may deduce or infer intent from the character and nature of the offense and the circumstances surrounding the offense." State v. J. D. Jones, No. E2003-01565-CCA-R3-CD, 2004 WL 1541309, at *8 (Tenn. Crim. App., Knoxville, July 9, 2004) (citing State v. Inlow, 52 S.W.3d 101, 104-105 (Tenn. Crim. App. 2000)); see also State v. Lowery, 667 S.W.2d 52, 57 (Tenn. 1984). Circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987). However, the circumstantial evidence must be consistent with the guilt of the accused, inconsistent with innocence, and must exclude every other reasonable theory except that of guilt. Tharpe, 726 S.W.2d at 900. Moreover, if a conviction is based entirely on circumstantial evidence, the facts must be "'so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone.'" State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002) (quoting State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993)). Furthermore, deference clearly lies with the jury, as the weight of circumstantial evidence is a matter for the jury to determine. State v. Coury, 697 S.W.2d 373, 377 (Tenn. Crim. App. 1985). Additionally, whether all other reasonable theories have been excluded by the evidence is also a question of fact for the jury. Pruitt v. State, 460 S.W.2d 385, 390-91 (Tenn. Crim. App. 1970).

The record on appeal establishes that the Defendant made a particularly violent unlawful entry into the victim's home by diving through a glass window. After gaining entry, the Defendant, according to the victim's testimony, resisted her efforts to eject him, overpowered her, pushed her

to the ground and began hitting and choking her. Mr. Knowles testified that he witnessed the Defendant assaulting the victim in her own apartment, and Officer Hutchins testified to the visible injuries of the victim when he arrived at the scene. As to the second aggravated burglary conviction, the record reveals that shortly after his first assault on the victim, the Defendant kicked in the locked door to Ms. Stewart's apartment, entered "in an uproar . . . cussing real bad," and was "mad" as he searched for the victim.

This Court has previously noted, in the context of reviewing a burglary conviction, that "[o]ne's actions are circumstantial evidence of his intent." State v. Barker, 642 S.W.2d 735, 737 (Tenn. Crim. App. 1982). We have further held that in addition to a defendant's actions, "the circumstances surrounding the entry must also be viewed in determining intent." State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). Here, the Defendant's violent entry of both apartments--diving through a glass window and kicking in a locked door--amount to strong circumstantial evidence of an intent to commit assault inside. In addition, the Defendant's actions of striking and choking the victim during the first aggravated burglary speak volumes as to his intent. Likewise, the Defendant's demeanor as he stormed about Ms. Stewart's apartment in a rage, cussing profusely while looking for the victim, along with his previous history of violence, also support the jury's conclusion that the Defendant intended to commit an assault inside Ms. Stewart's apartment. Based on these circumstances, we find the jury properly inferred the Defendant intended to commit an assault against the victim in both apartments. Therefore, we conclude the evidence was sufficient to convict the Defendant of aggravated burglary on both counts. This issue has no merit.

### C. Aggravated Assault Conviction

The Defendant also challenges the sufficiency of the evidence pertaining to his aggravated assault conviction for assaulting the victim.[4] Specifically, the Defendant claims that because "Ms. King was clearly the aggressor . . . the weight of the evidence supports a finding that [the Defendant] acted in self-defense and that his conviction of aggravated assault should be reversed."

Aggravated assault, as charged against the Defendant, is committed when:

A person . . . after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against such individual or individuals.

Tenn. Code Ann. § 39-13-102(c). Thus, at trial, the State bore the burden of proving that the victim had a protection order against the Defendant, and the Defendant nonetheless intentionally or knowingly either caused the victim bodily injury, assaulted her, or attempted to do either of the

---

[4]The Defendant does not challenge, on sufficiency grounds, his conviction for aggravated assault against Mr. Knowles.

same. The Defendant does not allege that the State failed to prove all the necessary elements for aggravated assault as required by statute, rather, the Defendant asserts that he is entitled to negate any criminal responsibility attached to his aggravated assault of the victim because he acted in self-defense.

The Defendant failed to raise the defense of self-defense at the trial level, and has therefore waived this issue on appeal. The State is required to prove the negation of a defense only "if admissible evidence is introduced supporting the defense." Tenn. Code Ann. § 39-11-201. Additionally, "[t]he issue of the existence of a defense is not submitted to the jury unless it is fairly raised by the proof." Tenn. Code Ann. § 39-11-203(c). Moreover, this Court is instructed to interpret the above statute to read that "[t]he defendant has the burden of introducing evidence that a defense is applicable." Id., Sentencing Commission Comments. See also State v. Leaphart, 673 S.W.2d 870, 873 (Tenn. Crim. App. 1984) (holding "[a]lthough it is well-settled that an accused is entitled to an affirmative instruction on every issue fairly raised by the evidence, there is no requirement that the court charge on matters not raised by the proof").

In the case at hand, the Defendant did not meet his burden of fairly introducing evidence supporting the statutory defense of self-defense at trial. Moreover, he failed to request jury instructions on self-defense, and failed to allege in his motion for a new trial that the trial court erred in not charging the jury on self-defense. However, the Defendant now asks this Court to reverse his aggravated assault conviction based on a theory of self-defense.

Tennessee Rule of Appellate Procedure 36(a) instructs this Court that it is not required to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Additionally, Tennessee Rule of Appellate Procedure 3(e) states in relevant part:

> in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

See also State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issue that should have been presented in the motion for a new trial). These procedural rules support our long-standing policy of refraining from finding a trial court to have erred in matters not brought to its attention at trial or in a motion for a new trial. Therefore, any claim to the statutory defense of self-defense outlined in Tennessee Code Annotated section 39-11-611 has been procedurally waived. Thus, the Defendant can argue only that the evidence was insufficient as a matter of law to find him guilty of aggravated assault because he assaulted the victim only after he had been struck by her.

The evidence presented in the record reveals that the Defendant violently attacked the victim: he threw her to the ground, choked her, hit her, and threw her against a concrete protrusion. The evidence also establishes that the victim received substantial physical injuries from the assault. The fact that the victim struck the Defendant after he dove through a window and into her apartment is of no consequence considering the ample evidence supporting the jury's conclusion that the Defendant assaulted the victim.

Moreover, the circumstances surrounding this incident also suggest the Defendant was where he had no lawful right to be when the assault occurred, he provoked the confrontation, and he used force well beyond that necessary to protect himself against the force used by the victim. The evidence reveals that the victim had an order of protection out against the Defendant forbidding him to have any contact with her. The evidence further shows that the Defendant ignored this order and broke into the victim's apartment–arriving at a place where he had no lawful right to be--and subsequently provoked the altercation that left the victim injured.

The evidence also reveals that the Defendant was a physically imposing man. It took two McMinnville Police officers to take the Defendant down and handcuff him. Quite the opposite of the Defendant, the victim was described by the trial court as "a little bitty lady. For the Court of Appeals, she probably doesn't weigh 90 pounds and about 5'3" or 4" if she's that tall." Accordingly, we find the evidence, when viewed in the light most favorable to the State, was indeed sufficient to sustain the Defendant's conviction for aggravated assault. This issue is without merit.

## II. Impeaching a Witness Based on His Juvenile Record

In his second issue on appeal, the Defendant claims the trial court erred by failing to allow him to impeach the testimony of Mr. Knowles by means of introducing a prior juvenile conviction. The record reveals that at trial, defense counsel attempted to attack the credibility of Mr. Knowles' testimony on cross-examination by questioning him about a prior juvenile adjudication for vandalism when the State objected. After a brief discussion, the trial court sustained the State's objection and prohibited the defense from pursuing its impeachment line of questioning because it determined that the conviction at issue, vandalism, was not a crime of dishonesty.

Now, on appeal, the Defendant infers that Mr. Knowles's juvenile vandalism adjudication may have been the equivalent of a felony, and therefore it need not be a crime of dishonesty to be admitted for impeachment purposes. Thus, the Defendant argues, the trial court erred in preventing the Defendant from impeaching Mr. Knowles' testimony through use of his prior juvenile record. The State elected not to address this particular claim on the merits, but rather argues that because the Defendant never challenged the trial court's ruling to prohibit the impeachment evidence on the basis that it was a felony conviction either at trial or at the hearing on his motion for a new trial, he has waived the right to raise this issue on appeal. While a review of this issue suggests it has no merit, we agree with the State and find the Defendant has waived this claim by failing to raise it at the trial level.

Tennessee Rule of Evidence 609, in pertinent part, permits a party to attack "the credibility of a witness" by introducing "evidence that the witness has been convicted of a crime" but only if

the crime was "punishable by death or imprisonment in excess of one year," i.e., a felony, or if it was a crime that "involved dishonesty or false statement." Tenn. R. Evid. 609(a)(2). The same rule of evidence also generally prohibits the introduction of "[e]vidence of juvenile adjudications" for the purpose of impeachment. Tenn. R. Evid. 609(d). However, a trial court may allow such evidence if: 1) the "conviction of the [juvenile] offense would be admissible to attack the credibility of an adult," and 2) "the court is satisfied that admission in evidence is necessary for a fair determination in a civil action or criminal proceeding." Id.

We begin our analysis by first noting that nowhere in the record does the Defendant provide evidence that Mr. Knowles' juvenile adjudication for vandalism was a felony conviction or the equivalent. The Defendant simply states in his appellate brief: "Except in cases where the damage is less than $500.00, all vandalism convictions are felony offenses that are punishable by death or imprisonment in excess of one year or more." The Defendant has failed to demonstrate that the witness' juvenile vandalism adjudication "would be admissible to attack the credibility of an adult," Id. However, we need not address the merits of the Defendant's claim at length because we find the Defendant has waived this issue.

Tennessee Rule of Appellate Procedure 36(a) instructs this Court that it is not required to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Additionally, this Court has held that a defendant cannot change theories from the trial court to the appellate court, and doing so generally waives appellate review of the issue. See State v. Alder, 71 S.W. 3d 299, 303 (Tenn. Crim. App. 2001) (holding that "[i]t is well-settled that an appellant is bound by the evidentiary theory set forth at trial, and may not change theories on appeal"). These procedural rules support our long-standing policy of refraining from finding a trial court to have erred in matters not brought to its attention through proper objections at trial.

In the case at hand, the Defendant failed to inform the trial court of a proper basis for allowing the impeachment testimony, and the trial court was left to rule on the State's objection with the information presented by the defense at that time. While the Defendant raised the general issue of the court's ruling on the impeachment evidence in his motion for a new trial, at the hearing on this motion the Defendant again, through counsel, challenged only the trial court's determination that the juvenile vandalism adjudication was not "a charge of dishonesty." However, on appeal, the Defendant has changed his evidentiary theory, arguing that the vandalism adjudication may have been a felony and therefore admissible. Because the Defendant failed to properly present the issue at trial and now wishes to change his theory on appeal, we find the issue has been waived.

## III. Excessive Sentences

The Defendant claims the trial court imposed excessive sentences for all four of his felony convictions. Specifically, the Defendant asserts that Blakely v. Washington, 124 S.Ct. 2531 (2004), requires a sentencing reduction because the trial court erroneously enhanced his felony conviction sentences based on facts not submitted to a jury. The Defendant also claims that the trial court violated Blakely when it "enhanced" his aggregate sentence by running three of his four felony conviction sentences consecutively. We disagree.

**A. Standard of Review**

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

**B. Improper Enhancements**

The Defendant asserts the trial court erred in imposing excessive sentences for all four of his Class C felony convictions by enhancing them beyond the statutory minimum based on facts not submitted to the jury: a Blakely violation. In calculating a sentence for a Class C felony conviction, the "presumptive sentence . . . shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c). If there are enhancement, but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. See Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors for a Class C felony requires the court to start at the minimum, next assign the proper weight for any applicable enhancement factor(s), and finally apply a reduction within the range as appropriate for any mitigating factor(s). See Tenn. Code Ann. § 40-35-210(e).

The sentence for a Class C felony, where the defendant is a Range II offender is "not less than six (6) nor more than ten (10) years." Tenn. Code Ann. § 40-35-112(b)(3). Thus, the presumptive

sentence for each of the Defendant's Class C felony convictions is six years. However, the weight to be afforded enhancement factors is left to the trial court's discretion so long as it complies with the principles of the sentencing act and the court's finding are supported by the record. See State v. Palmer, 10 S.W.3d 638, 646 (Tenn. Crim. App. 1999).

In this case, the trial court determined the Defendant to be a multiple, Range II offender.[5] The court further determined that six separate enhancement factors applied to either some or all of the Defendant's four felony conviction sentences. See Tenn Code Ann. § 40-35-114(2), (7), (9), (10), (12), and (14). The court found no mitigating factors applicable in the Defendant's case. Based on these findings, the trial court enhanced each of the Defendant's four felony sentences beyond the presumptive starting point by four years, up to the statutory maximum of ten years.

The Defendant now claims that his Sixth Amendment right to a trial by jury was impugned when the trial court made determinations of fact for sentence enhancement purposes that were not submitted to a jury, citing Blakely v. Washington, 124 S.Ct. 2531 (2004). However, our supreme court has recently held that the enhancement component of Tennessee's sentencing structure does not violate a defendant's Sixth Amendment right to a trial by jury. See State v. Gomez, ___ S.W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848 (Tenn. 2005). Our supreme court stated that Tennessee's sentencing structure "merely requires judges to consider enhancement factors," and unlike the sentencing guidelines struck down in Blakely, "does not mandate an increased sentence upon a judge's finding of an enhancement factor." Gomez, ___ S.W.3d at___, 2005 WL 856848, at *26. Thus, relying on Blakely as clarified by United States v. Booker, __ U.S. ___, 125 S.Ct. 738 (2005), our supreme court has determined that Tennessee's sentencing structure provides the type of "'intermediate,' non-mandatory, advisory sentencing scheme" that the United States Supreme Court has expressly ruled acceptable, permitting judges to exercise the type of sentencing discretion applied in the case at hand. Id. Therefore, the Defendant's claim of a Sixth Amendment right violation based on the trial court's enhancement of his sentences is without merit.

### C. Consecutive Sentences and Blakely

The Defendant also claims that the trial court committed a Blakely error when it increased the Defendant's aggregate sentence beyond the possible minimum by imposing consecutive sentencing. As stated above, our supreme court has recently held that Tennessee's sentencing structure does not trigger a Blakely violation, therefore this claim is also without merit. See Gomez, ___ S.W.3d ___ (Tenn. 2005). We also note that even prior to our supreme court's recent ruling in Gomez, this Court has consistently held that Blakely does not affect consecutive sentencing determinations. See State v. Rose Marie Hernandez, No. M2003-01756-CCA-R3-CD, 2004 WL 2984844, at * 4 (Tenn. Crim. App., Nashville, Dec. 16, 2004); State v. Earice Roberts, No. W2003-02668-CCA-R3-CD, 2004 WL 2715316, at * 15 (Tenn. Crim. App., Jackson, Nov. 23, 2004); State v. Lawrence Warren Pierce, No. M2003-01924-CCA-R3-CD, 2004 WL 2533794, at * 16 (Tenn. Crim. App., Nashville, Nov. 9, 2004).

---

[5]The Defendant does not challenge the fact that his criminal record requires that he be sentenced as a multiple, Range II offender.

## IV.  Consecutive Sentencing

In his last issue on appeal, the Defendant claims that the trial court erred in mandating that three of his four ten-year felony conviction sentences be served consecutively.  Specifically, the Defendant argues that this consecutive sentencing, resulting in a thirty year effective sentence, was not reasonably related to the severity of the offenses involved, and was not the least severe measure necessary to protect the public from his future criminal conduct.  We disagree.

We begin by noting that it is within the sound discretion of the trial court whether to impose consecutive or concurrent sentences.  See State v. Adams, 973 S.W.2d 224, 230-31(Tenn. Crim. App. 1997).  A Tennessee court may order consecutive sentences in cases where it finds any of seven statutorily enumerated criteria to be applicable "by a preponderance of the evidence."  Tenn. Code Ann. § 40-35-115(b).  In addition to these criteria, consecutive sentencing is also subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed," that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and that a defendant's "potential" for "rehabilitation" be considered.  Tenn. Code Ann. § 40-35-103(2), (4) and (5).  Additionally, we are reminded that "the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved."  Tenn. Code Ann. § 40-35-115 Sentencing Commission Comments.

In the case at hand, the trial court found two [6] consecutive sentencing critera applied: the Defendant is "an offender whose record of criminal activity is extensive," and he was being "sentenced for an offense committed while on probation."  Tenn. Code Ann. § 40-35-115(b)(2), (6). The trial court also stated for the record that it imposed consecutive sentences because the "circumstances surrounding the commission of the [Defendant's] offense" were such that "confinement is necessary to protect society from the [Defendant's] unwillingness to lead a productive life . . . ."  The court further found that the "aggregate length of the sentence reasonably relates to the offense[s] [of] which the [Defendant] stands convicted."

We find that the record contains sufficient evidence to support consecutive sentences.  The trial court noted that it had "read contract books that were shorter" than the Defendant's criminal record.  Indeed, the pre-sentence report, contained in the record on appeal, lists no less than forty-six charges, with at least twenty-five ending in convictions.  The report also noted that, while not verified due to the absence of computer records, a previous case file for the Defendant listed an additional thirty-two charges between the years of 1966 and 1979.  The Defendant's prior convictions include multiple DUIs, multiple assaults, theft, robbery and aggravated robbery.  When asked about his extensive criminal record at his sentencing hearing, the Defendant replied that he "pled guilty to a lot of stuff [he] didn't do."  We conclude the trial court properly found the Defendant "is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2).

---

[6] The trial court also considered applying consecutive sentencing criterion (4), that the Defendant was a "dangerous offender." However, the court first determined this factor "maybe" applied, then stated it "probably" applied, but in its final analysis concluded that it did not attribute "much weight" to criterion (4).

-12-

A certified judgment form indicating the Defendant was on probation when he committed the instant crimes was admitted into evidence at the sentencing hearing. Additionally, Mr. Earl Bloodworth of the Department of Probation and Parole testified at the sentencing hearing that the Defendant was placed on probation for two separate felony offenses in May and June of 2002, and was on probation for these offenses when he committed the instant offenses. Therefore, we find that the trial court properly found that the Defendant was "sentenced for an offense committed while on probation." Id. at § 40-35-115(b)(6).

Additionally, the violent nature of the offenses the Defendant committed against the victim and her juvenile neighbor indicates that the effective sentence is reasonably related to the severity of these crimes. The Defendant's extensive criminal history reveals that he has little potential for rehabilitation, and his blatant disregard for legal consequences less severe than imprisonment is obvious. While on probation for two other prior assaults, the Defendant committed the aggravated assaults and aggravated burglaries at issue in this case. Furthermore, a court order of protection did nothing to prevent the Defendant from diving through the victim's window and violently assaulting her, and then turning a knife on those rushing to her assistance. An extended sentence is warranted in this case to protect the public from any further criminal conduct by the Defendant. Accordingly, we affirm the trial court's imposition of consecutive sentences. This issue has no merit.

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
DAVID H. WELLES, JUDGE

-13-