IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

FEBRUARY 1999 SESSION

FILED

June 7, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 02C01-9806-CC-00185 |
| Appellee, | ) | |
| | ) | Henry County |
| v. | ) | |
| | ) | Honorable Julian P. Guinn, Judge |
| CHARLES DIRK LEMONDS, | ) | |
| | ) | (Theft of Property) |
| Appellant. | ) | |

FOR THE APPELLANT:

W. Jeffery Fagan
Assistant District Public Defender
117 North Forrest Avenue
Camden, TN  38320

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Clinton J. Morgan
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0493

G. Robert Radford
District Attorney General
P. O. Box 686
Huntingdon, TN  38344-0686

Steven L. Garrett
Assistant District Attorney General
P. O. Box 94
Paris, TN  38242

OPINION FILED: _____

AFFIRMED

JAMES C. BEASLEY, SR., SPECIAL JUDGE

# **O P I N I O N**

The defendant, Charles Dirk Lemonds, appeals as of right from his conviction for theft of property over the value of $10,000 but less than $60,000. The trial court imposed a sentence of eight years in the Department of Correction as a Range II, multiple offender, and a $10,000 fine. The defendant challenges the sufficiency of the convicting evidence. From our review, we find that the facts contained in the record and inferences which may be drawn therefrom are adequate to justify the jury's finding of guilt beyond a reasonable doubt.

On September 2, 1997, the residence of Johnny Singleton located on Highway 140 West in Henry County was burglarized. Mr. Singleton's Harley Davidson Super Glide motorcycle valued at $13,000 was stolen.

Johnny Ray Singleton testified that, in August, he and Pat Veazey had a dispute over some repair work Veazey did on a Corvette owned by Singleton. Later, Pat Veazey, accompanied by Bobby Veazey, Chris Veazey, Gary Medlock, and David Wilson, confronted Singleton at his residence and an altercation occurred in the game room where the motorcycle was kept. As a result, these six individuals were required to appear in General Sessions Court for a hearing commencing at 9 a.m. on September 2, 1997 and concluding around 3 p.m.

Between 11:00 a.m. and noon, the defendant entered the courtroom, spoke briefly to one or more in the Veazey group, and then left. When Singleton arrived home at 4:30 p.m., he found a broken side window and the front door kicked in. Although there was other valuable property in the house, the only item missing was the motorcycle. Singleton testified the motorcycle meant more to him than anything except his family. A photograph of the motorcycle was introduced as an exhibit. Parts of the motorcycle, including the transmission, front wheel, rear fender, and exhaust pipes, were recovered from a lake approximately one-half mile from the defendant's residence.

Pat Veazey was called by the state and testified that he and the defendant were good friends. He identified a photograph of his red and black pickup truck with a primed (tan) front fender, but stated the truck was not in running condition on September 2. He denied seeing the motorcycle when he was at Singleton's house. When the defendant came to the General Sessions courtroom, he spoke only to Gary Medlock.

Melissa Ann Alexander, Singleton's neighbor, testified that shortly after 10 a.m. on September 2, 1997, she saw a truck with a yellow left front fender backed up to the Singletons' porch. She saw the truck leave going toward Puryear with something black in the bed of the truck. Ms. Alexander identified the photograph of Pat Veazey's truck as the vehicle she saw.

Puryear Police Chief Jimmy Ray testified that he was off duty on the morning of September 2, 1997 and was driving his farm tractor on Highway 140 West between 9:30 and 10:00 a.m. As he drove by Singleton's house, Ray saw a dark-colored Chevrolet pickup truck backed up to a bank near the house. A "medium, heavy-set fellow" was doing something at the back of the truck. He could not identify the person and said the truck was not red.

Michael Thomas Trantham testified that he was good friends with both the defendant and Singleton. He knew that Singleton owned a Harley Davidson motorcycle, but was not aware of the defendant ever owning or possessing a Harley Davidson. Sometime after September 2, the defendant called and told Trantham that he was having trouble with a Harley Davidson Super Glide, explaining that it felt like the chain broke while he was riding it. When asked about the owner, the defendant stated he "had to take it off somebody's hands that didn't need it." Trantham testified that the defendant asked him not to tell anyone and then said, "It could be one of your buddies, you know."

The next day, after reading that a motorcycle had been stolen on Highway 140, Trantham called Singleton and learned that his bike was missing. They shared the belief

3

that the defendant had the missing motorcycle.

Kenneth Nance, a cousin and neighbor of the defendant, testified that after September 2, 1997 he heard someone "throttle up" a Harley Davidson in the Lemonds' driveway. He saw a "big fellow" who he thought was the defendant on a yellow and orange motorcycle with drag pipes. He could not say whether the motorcycle was the one depicted in the photograph of Singleton's bike. Because he did not make eye contact, Nance could not positively identify the rider but thought he was his cousin, the defendant. When last seen, the rider on the motorcycle was going toward the lake.

Dale Willoughby, who owns a motorcycle business in Henry County, testified that shortly after September 2 the defendant and his father came in with a broken motorcycle belt and ordered a new one. The old belt could have come from a Harley Davidson, and the new one could be used on several different types of motorcycles including Harley Davidson.

Two days after the theft, Detective Gary Vandiver questioned the defendant about the belt. The defendant told Detective Vandiver that the broken belt belonged to a friend of his named Fox, and he had purchased the new belt for Fox. The defendant said the bike Kenny Nance saw him on belonged to Fox, who lives near Hopkinsville, Kentucky and drives a red Chevrolet S10 pickup truck. Vandiver further testified that on the following day when he told the defendant that Fox denied any knowledge of the motorcycle, the defendant told him he talked to the wrong Fox, but gave no further information as to the identity of Fox. An arrest document was introduced which reflected that the defendant is five feet, ten inches tall and weighs 260 pounds.

The last witness called was Charles Fenton Dawson whose testimony was substantially as follows. His nickname is Fox; he has known the defendant for five or six years; in September of 1997, he lived near Hopkinsville and owned a red Chevrolet S10 pickup truck; he had not owned a motorcycle in many years and never gave the defendant

4

a Harley Davidson to keep or to repair.

The defendant offered no proof.

When the sufficiency of the evidence is challenged, the standard of review by an appellate court is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to verdicts based on both direct and circumstantial evidence. State v. Thomas, 755 S.W.2d 838, 842 (Tenn. Crim. App.), per. app. denied (Tenn. 1988); State v. Lequire, 634 S.W.2d 608, 614 (Tenn. Crim. App. 1981), per. app. denied (Tenn. 1982). Circumstantial evidence may be used exclusively to establish guilt for a criminal act. State v. Bohanan, 745 S.W.2d 892, 895 (Tenn. Crim. App. 1987), per. app. denied (Tenn. 1988); State v. Buttrey, 756 S.W.2d 718, 721 (Tenn. Crim. App.), per. app. denied Tenn. 1988). For this to occur, the circumstantial evidence must be consistent with the guilt of the accused, inconsistent with his innocence, and must exclude every other reasonable theory or hypothesis except that of guilt. State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987).

The jury decides the weight to be given to circumstantial evidence, as well as the inferences to be drawn, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. State v. Coury, 697 S.W.2d 373, 377 (Tenn. Crim. App.), per. app. denied (Tenn. 1985); Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 457 (1958). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913 (Tenn. 1982). It is not the function of this court to reweigh evidence adduced at a criminal trial. A guilty verdict, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in testimony in favor of the theory of the

5

state. <u>State v. Hatchett</u>, 560 S.W.2d 627, 630 (Tenn. 1978). On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978).

The defendant does not challenge the theft or value of the subject motorcycle. He maintains that the inconsistencies in the state's case are such that there was not a showing of sufficient evidence to convict the defendant of the theft, and he argues that none of the state's witnesses saw the defendant take or possess the motorcycle.

However, any inconsistencies in the proof were for the jury to resolve. Likewise, it was for the jury to determine whether the circumstantial evidence and inferences drawn therefrom were consistent with the defendant's guilt and inconsistent with his innocence.

Considered in its light most favorable to the state, the following evidence is sufficient to exclude every other reasonable theory or hypothesis except that of the guilt of the defendant.

The defendant and Pat Veazey were good friends. On the other hand, the defendant reportedly referred to Singleton, the owner of the stolen bike, as a "sorry son of a bitch." The differences between Singleton and Veazey had resulted in a court hearing requiring their presence at the time of the theft. A truck, described as one owned by Veazey, was used in the theft and a man of similar size and build as the defendant was seen near the truck. Within an hour or two of the theft, the defendant came to the courtroom and spoke with someone in the Veazey group.

The prosecution's suggestion of revenge as a motive is supported by the fact that the motorcycle was dismantled and discarded in a nearby lake, as well as proof that none of the other valuable property contained within the house was taken during the burglary.

Shortly after the theft, the defendant told Michael Trantham that he had taken a Harley Davidson Super Glide "off someone's hands" but not to tell anyone because it could be one of Trantham's friends. The defendant was seen riding a similar motorcycle toward the lake where parts of the stolen bike were later found. When questioned by investigators, the defendant stated that the motorcycle he was riding, and for which he purchased a drive belt, belonged to a person named Fox. The jury could reasonably have inferred that the person identified as Fox by the defendant was in fact the witness, Charles Dawson, who denied under oath the defendant's allegations and thus determined that the defendant's explanation lacked plausibility.

The defendant has failed to demonstrate why this evidence is insufficient to support the jury's verdict. The judgment of the trial court is affirmed.

_____
JAMES C. BEASLEY, SR., SPECIAL JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE

_____
JOE G. RILEY, JUDGE